[No. B121158. Second Dist., Div. Four. Feb. 1, 1999.]

In re JUSTIN B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JUSTIN B., Defendant and Respondent.

**COUNSEL**

Jill D. Lansing, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (C. S.), P. J.**—Justin B., a minor, appeals from the order of wardship (Welf. & Inst. Code, § 602), following his admission to having received stolen property (Pen. Code, § 496)[1] as alleged in count 2 of the petition, and "suitable placement" for a confinement period not to exceed three years.

Appellant contends the court erred in denying his motion to suppress (Welf. & Inst. Code, § 700.1) the statements he made at the police station on

---

[1] All further section references are to the Penal Code unless otherwise indicated.

the ground they were "illegally seized because there was insufficient probable cause to arrest him on the auto burglary [and receiving stolen property] charge[s] and the curfew violation did not authorize transporting him to the police station for questioning."

Based on our review of the record and applicable law, we agree and reverse.

We hold that the mere presence of a passenger in a vehicle lawfully stopped for a traffic violation and which contained in plain view behind the driver's seat personal property which possibly could have been stolen from unknown vehicles at some unspecified time does not constitute probable cause to arrest the passenger for vehicle burglary (§ 459) or receiving stolen property (§ 496).

We further hold that where a minor's only offense is a curfew violation, a peace officer abridges the minor's right to be free from unreasonable searches and seizures (U.S. Const., 4th Amend.) when that officer transports the minor to the police station and subjects the minor to questioning designed to elicit incriminating responses.

### FACTUAL AND PROCEDURAL SUMMARY

At the hearing on the suppression motion, Manhattan Beach Police Officer Robert Cochran testified that on February 11, 1998, about 3:56 a.m., he observed a GMC or Chevrolet pickup truck, which had a broken taillight and a large crack across the entire length of the windshield, traveling about 60 miles per hour (MPH) east on Rosecrans near Sepulveda where the speed limit was 40 MPH.

After stopping the vehicle, Officer Cochran approached the driver's side and asked Joseph C., a minor, for his driver's license, the vehicle registration, and proof of insurance, which Joseph C. provided. The truck was registered to his father, Donald C. While standing at the driver's window, the officer, who had a flashlight, observed three "cell phones" with cigarette lighter adapters next to a "very large speaker box" on the back floorbed of the extended cab on the driver's side. He also noticed an owner's manual from a Ford Explorer and another manual cover from a Lincoln next to it.

When asked who owned the phones, Joseph C. responded that they belonged to his father who was "a cable guy." When asked where he was coming from and where he was headed, Joseph C. replied "they had been working on his vehicle at his house earlier in the evening and went to

Jack-in-the-Box to get something to eat." The officer considered his reply to be suspicious because the vehicle was not being driven in a manner consistent with his statement that "they were heading home" in view of the address on his driver's license and the officer's personal knowledge of the location of the two Jack-in-the-Box restaurants he was aware of in the surrounding area.

Based on his suspicion that Joseph C. and his passenger, appellant, were involved in auto burglaries, the officer removed the minors out of the pickup truck and placed both under arrest, i.e., he handcuffed the minors and placed them in the back of his police vehicle. He ordered appellant out of the pickup in order to arrest him "[s]everal minutes" after he ordered Joseph C. to exit that vehicle. After retrieving the cell phones, the officer conducted a search of the pickup and found in front of the "bench-type seat" a black canvas bag containing tools. He opined the "screwdrivers, pliers, [and] channel locks" found inside the bag were "the type that are commonly used to help commit burglaries."

Officer Cochran testified that he was aware of information about recent vehicle burglaries in Manhattan Beach at the time of the initial stop. He explained that after he arrives at work at night, he reads the log of the events that occurred during the day. Based on his reading of those logs, he noticed that "[v]ery frequently, when there's a host of vehicle burglaries, . . . 90 percent of the time the only thing that is taken are cellular phones." He believed that the vehicle burglaries were "[p]redominantly nighttime burglaries" which were not discovered, and thus, not reported until the next morning. He admitted, however, there was "[n]ot one consistent method" in which these vehicle burglaries were committed. He further admitted that at the time he took custody of both minors, he did not have any information about any vehicle burglaries that had occurred that evening or about the theft of the phones or any other items he observed in the pickup.

Officer Cochran also testified that at the time of the traffic stop, he was aware Joseph C. and appellant were minors and were in violation of the Manhattan Beach curfew, which was in effect from 10:00 p.m. until 6:00 a.m.[2] He believed a curfew violation was an "arrestable offense." He admitted, however, that neither Joseph C. nor appellant was arrested for a curfew

---

[2]We take judicial notice of Manhattan Beach Ordinance No. 1755, effective August 6, 1987, and ordinance No. 1982, effective June 4, 1998 (Manhattan Beach Curfew Ordinance). The former was in effect at the time of appellant's detention and arrest. The latter became effective after his arrest. (Evid. Code, §§ 452, subd. (b), 459.)

Section 4.56.030 of title 4, chapter 56 of that ordinance provides: "4.56.030 Curfew. [¶] It shall be unlawful for any minor to be present in or remain in or upon the public streets, alleys, parks, playgrounds or other public places, establishments, vacant lots or other unsupervised

violation. They were arrested "strictly for burglary and receiving." It was stipulated that Joseph C. was on probation.

After arresting the minors, Officer Cochran called for a tow truck and impounded the pickup. He then transported the minors to the station, which occurred about 30 to 40 minutes after their arrest. They arrived around 4:40 a.m.

Between 4:40 a.m. and 5:22 a.m., when he began to interrogate appellant, Officer Cochran made investigative telephone inquiries to determine whether the cellular phones were "cloned" and to verify Joseph C.'s claim that the phones belonged to his father. Prior to questioning appellant, Officer Cochran "had no indication that these phones were stolen" and his belief that they were stolen "was not verified."

Officer Cochran interviewed appellant about the phones at 5:22 a.m., around 35 to 40 minutes later, in the station briefing room. Appellant agreed to speak after having been advised of and waiving his rights. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].) Appellant then made the statements at issue, which are not part of the record.

In denying the suppression motion, the juvenile court first found that the items found in the truck were properly seized pursuant to a search incident to the arrest of the minors for probable cause. The court also found the officer was entitled to conduct the search because the minors were in violation of

---

places, between the hours of 10:00 p.m. and 6:00 a.m. of the following day. It shall also be unlawful for a parent or guardian of a minor to knowingly permit, or by insufficient control, allow a minor for whom they are responsible, to remain in any public place or on the premises of any establishment within the City during curfew hours. [¶] The curfew shall not apply to the following: [¶] A. Any minor accompanied by a parent, legal guardian or a responsible adult to which custody of the minor has been given by the parent or legal guardian; and [¶] B. Any minor performing any task at the direction of his or her legal guardian or to any minor responding to an emergency with or without parental consent; and [¶] C. To any minor then acting within the course and scope of his or her employment; and [¶] D. To any minor on the property of, or the sidewalk directly adjacent to, or the buildings immediately adjacent to the building in which he or she resides; and [¶] E. To any minor attending organized association activity, such as school meetings, classes or sporting events, religious meetings, dances, concerts, theatrical performances, or similar events, or other Constitutionally protected activity; and [¶] F. To any minor engaged in reasonable and direct travel to and from those activities described in subsection (E)."

Section 4.56.040 of that chapter regarding enforcement provides: "Section 4.56.040 Enforcement. [¶] Every police officer is hereby authorized and empowered to demand from any person, whom the officer has reasonable cause to believe is in violation of Section 4.56.030, that such person give his or her name, address, proof of age, the name of parent, guardian or adult having care or custody of such person, his or her purpose in being in the public place, and other information reasonably necessary to determine whether such violation exists."

curfew, which the court believed was an arrestable offense. The court further found the officer was justified in conducting an inventory search because the pickup was impounded.[3]

With respect to the statements, the court ruled that the statements were admissible because the detention was not "unduly lengthy."

DISCUSSION

1. *No Probable Cause to Support Arrest for Vehicle Burglary or Receiving Stolen Property*

██ Appellant contends the evidence is insufficient to support the court's finding that appellant's arrest was warranted based on probable cause to believe appellant committed the offenses of vehicle burglary and receiving stolen property. We agree.

██ "A brief stop of a suspicious individual, in order . . . to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." (*Adams* v. *Williams* (1972) 407 U.S. 143, 146 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612].) "The law is well-established that 'in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some [criminal] activity . . . is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].) " '[T]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to "enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges. . . ." ' " (*People* v. *Leyba* (1981) 29 Cal.3d 591, 599 [174 Cal.Rptr. 867, 629 P.2d 961], quoting *In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].)

██ "As has been noted, the principal difference between a *Terry* detention and an arrest is the distinction between 'suspicion that [a person] may

---

[3]The vehicle was impounded following the arrest of Joseph C., the driver, and appellant, the passenger and sole other occupant. " 'A so-called inventory search is not an independent legal concept but rather an incidental administrative step following [impound] . . . . .' (*Illinois* v. *LaFayette* (1983) 462 U.S. 640, 644 . . . .)" (*People* v. *Green* (1996) 46 Cal.App.4th 367, 374 [54 Cal.Rptr.2d 12].) The propriety of the seizure of the items in the vehicle as incident to an inventory search following impound of the vehicle, as to appellant, thus depends on whether appellant's arrest was lawful. Accordingly, in this context, an inventory search is not a distinct and separate ground upon which seizure of the items in the vehicle can be justified.

be connected with criminal activity' (*Terry* v. *Ohio* [1968] 392 U.S. [1,] 10 . . .), and 'probable cause to believe that the suspect has committed a crime. . . .' (*Ibid.*) And what is probable cause? In *Illinois* v. *Gates* (1983) 462 U.S. 213 . . . , the court stated: ' "[T]he term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation. . . . It imports a seizure made under circumstances which warrant suspicion." . . . While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." ' (*Id.* at p. 235 . . . .) [¶] In *People* v. *Price* (1991) 1 Cal.4th 324, 410 . . . , our Supreme Court stated probable cause to arrest 'exists when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime.' At some point, a detention can become an arrest if not by actual express designation, then by effect. 'When the detention exceeds the boundaries of a permissible investigative stop, the detention becomes a de facto arrest requiring probable cause.' (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 384 . . . ; see, e.g., *Dunaway* v. *New York* (1979) 442 U.S. 200, 212 . . . .)" (*People* v. *Gorrostieta* (1993) 19 Cal.App.4th 71, 82-83 [23 Cal.Rptr.2d 92].)

■ "Determining whether an officer had cause to arrest requires two analytically distinct steps, each with its own standard of review. First, the court ascertains when the arrest occurred and what the arresting officer then knew; second, the court decides whether the officer's knowledge at the time of arrest constituted adequate cause. On appeal, a reviewing court must accept the trial court's express or implied findings on disputed factual issues in the first step of the inquiry if they are supported by substantial evidence, but a reviewing court must use its independent judgment to review the second step of the inquiry. (*People* v. *Duncan* (1986) 42 Cal.3d 91, 97 . . . ; *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 . . . .)" (*People* v. *Price* (1991) 1 Cal.4th 324, 409 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

■ Mindful of these principles, we conclude the record is barren of any facts known to Officer Cochran at the time of appellant's arrest which would support the requisite probable cause justifying appellant's arrest for vehicle burglary or receiving stolen property. The officer made no inquiry of appellant. There are no facts from which the court could infer that appellant, who was simply a passenger and who did not say or do anything suspicious, even knew of or should have known of the presence of the phones behind the driver's seat or the presence and contents of the black canvas bag in the front part of the pickup. (See, e.g., *People* v. *Williams* (1970) 9 Cal.App.3d 565, 568 [88 Cal.Rptr. 349] ["no evidence that the officer knew anything at all

about the relationship between defendant and the driver of the car except that defendant was a passenger"]; see also *People* v. *Vermouth* (1971) 20 Cal.App.3d 746, 755 [98 Cal.Rptr. 65] ["Whether there is probable cause to arrest more than one occupant of a vehicle halted by the police on a public highway for a felony based upon possession of contraband observed in the car generally depends upon the facts of a given case."]; cf. *People* v. *Hill* (1974) 12 Cal.3d 731, 749, fn. 19 [117 Cal.Rptr. 393, 528 P.2d 1] [presence of marijuana in defendants' vehicle found during valid investigation, coupled with defendants' attempt to escape, constituted probable cause to arrest both driver and passenger for possession of marijuana, albeit "whether a passenger can validly be arrested for auto theft under these circumstances" is an issue left "for another day"]; *People* v. *Williams* (1971) 17 Cal.App.3d 275, 278-279 [94 Cal.Rptr. 735] [defendant passenger observed jointly loitering near school, a prohibited activity, with driver]; *People* v. *Ragone* (1948) 84 Cal.App.2d 476, 480 [191 P.2d 126] [driver and defendant passenger exited parked stolen car with motor running and attempted to commit a burglary].)

2. *Statements From Custodial Interrogation Based on Curfew Violation Product of Unlawful Search and Seizure*

■ Appellant contends his custodial interrogation was not proper as incident to an arrest for a curfew violation. We agree.

Appellant's attorney specifically objected that the officer could not "take [appellant] to the station for a curfew violation and keep him an hour and a half or however long and investigate and interrogate him about this other crime." He did not identify any particular statutory or other authority in support of his objection. Nonetheless, we find this objection to be sufficiently specific to alert the court to the basis of his complaint, i.e., the officer was not authorized by law to conduct a custodial interrogation of appellant at the station based on a curfew violation. (See, e.g., *People* v. *Holt* (1997) 15 Cal.4th 619, 666-667 [63 Cal.Rptr.2d 782, 937 P.2d 213] [claim of error not forfeited or waived if objection alerts court to basis on which exclusion sought since a particular form of objection is not required]; *People* v. *Torres* (1950) 98 Cal.App.2d 189, 192 [219 P.2d 480] [court is presumed to know the law].)

The Manhattan Beach Curfew Ordinance authorizes a police officer to demand from the person under reasonable suspicion of violating its provisions any information which would be reasonably necessary to determine whether a violation had occurred. It does not, however, contain any provision regarding what the officer can or cannot do upon determining the

person has violated the ordinance. Such guidance is provided, instead, by statute.

As a general rule, a peace officer is entitled to take a minor who is in violation of a local curfew ordinance into "temporary custody," the functional equivalent of the arrest of an adult (*In re Thierry S.* (1977) 19 Cal.3d 727, 734, fn. 6 [139 Cal.Rptr. 708, 566 P.2d 610]), but the officer must then either release the minor; deliver or refer the minor to the proper agency for shelter care, counseling, or diversion; release the minor following the preparation of a notice to appear before the probation officer; or take the minor without unnecessary delay before the county probation officer. Moreover, the officer "shall prefer the alternative which least restricts the minor's freedom of movement, provided that alternative is compatible with the best interest of the minor and the community." (Welf. & Inst. Code, §§ 601, 625, 626, 626.5.) Alternatively, if the officer determines the minor should be "brought to the attention of the juvenile court, he or she shall thereafter" either release the minor after delivery of written notice to appear to the minor, parent, guardian, or responsible relative or take the minor without "unnecessary delay" before the county probation officer within 24 hours after taking the minor into custody, whichever "alternative . . . least restricts the minor's freedom of movement, provided that alternative is compatible with the best interest of the minor and the community." (Welf. & Inst. Code, § 626.5.)

In contrast, where a city or county adopts a resolution implementing Welfare and Institutions Code section 625.5, the officer, for the first curfew violation, is not authorized to do anything other than to issue the minor a warning citation, a copy of which is forwarded to the minor's parents or guardian for signature and return. For a subsequent violation, the officer is entitled to temporarily detain the minor and then the officer must transport the minor to the minor's parent or to a temporary place of residence within the state. The officer is also imbued with discretion not to detain the minor temporarily if he or she determines the minor has a valid reason for violating the ordinance. (Welf. & Inst. Code, § 625.5, subd. (c).)

In view of the above statutory restrictions, we conclude the Legislature has preempted the field of what precise actions a peace officer may undertake upon finding a minor in violation of a curfew ordinance. (See *Lancaster v. Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681] ["Local legislation in conflict with general law is void. Conflict exists if the ordinance duplicates . . . , contradicts . . . , or enters an area fully occupied by general law, either expressly or by legislative implication . . . ."]; *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859-860 [76

Cal.Rptr. 642, 452 P.2d 930] [no local legislation is permissible if the Legislature's intent to occupy a particular field is apparent from the " ' "whole purpose and scope of the legislative scheme" ' . . ." (citation omitted)]; cf. *In re Rudolfo A.* (1980) 110 Cal.App.3d 845, 849-853 [168 Cal.Rptr. 338] [ordinance criminalizing trespass on school grounds not preempted by state law].) Transporting the minor who has violated a curfew ordinance to the station and conducting a custodial interrogation is not authorized.[4] (See also 80 Ops.Cal.Atty.Gen. 149 (1997).)

Based on the foregoing, we conclude Officer Cochran's transportation of appellant to the station and the ensuing custodial interrogation were unlawful and violative of appellant's right to be free from unreasonable searches and seizures under the Fourth Amendment of the federal Constitution. The court therefore erred in denying appellant's suppression motion.

### DISPOSITION

The order of wardship is reversed.

Hastings, J., and Curry, J., concurred.

---

[4]We note that the City of Manhattan Beach did not pass a resolution adopting section 625.5 of the Welfare and Institutions Code.