[No. G023963. Fourth Dist., Div. Three. Nov. 23, 1999.]

In re CHARLES C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHARLES C., Defendant and Appellant.

**COUNSEL**

Patricia Ihara, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Adrianne S. Denault and James D. Dutton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CROSBY, J.**—The juvenile court found Charles C. possessed methamphetamine in violation of Health and Safety Code section 11377, subdivision (a) (see Welf. & Inst. Code, § 602). He claims the warrantless search of his person was illegal and substantial evidence does not support the trial court's finding that there was probable cause to establish a curfew violation. We affirm.

I

On July 24, 1997, Orange Police Officer Raymond Schaffer received a call indicating juveniles were loitering in front of a Ralph's supermarket on Chapman Avenue and might be soliciting others to buy alcohol for them. Schaffer saw Charles and another youth standing in front of the store around 12:45 a.m. He detained the minors to inquire into the situation. Another officer contacted four other youths gathered across the street. Two minors from the second group were brought over to Schaffer's location, and he conversed with the quartet for approximately 20 minutes. Schaffer deduced the youths were under 18 years of age and arrested them for a curfew violation.[1] He also concluded there was insufficient evidence to pursue a solicitation to purchase alcohol charge.

---

[1] The City of Orange has a 10:00 p.m. to 5:00 a.m. curfew for minors. (Orange Mun. Code, § 9.28.010.) It reads, "No person under eighteen (18) years of age shall remain or be in or on any public street, alley, park or other public place between the hours of 10:00 p.m. and 5:00 a.m. unless accompanied by a parent, guardian or other person having a legal custody and control of such minor, or who is in the performance of a duty directed by such parent or

At Schaffer's request a police dispatcher made numerous attempts to notify the minors' parents and arrange for them to be picked up at the Ralph's parking lot. When these efforts proved unsuccessful, the officers conducted a cursory weapons search, handcuffed the minors, and transported them to the police station. There, they were taken to an interview room in the detective bureau, where their handcuffs were removed and they were told to fill out a "juvenile contact report." When the paperwork was complete, Schaffer read Charles his *Miranda* rights and conducted an inventory search. He found a plastic baggie in the right upper coin pocket of the minor's pants and asked, "What is this?" Charles responded, "speed." The Orange County Sheriff's Crime Lab confirmed the baggie contained .6 grams of methamphetamine.

Officers finally reached one of Charles's relatives about 1:45 a.m. He was released around 3:00 a.m. The juvenile court denied a defense motion to suppress, finding Charles was in violation of curfew and the officer was justified in conducting a full body search.

II

Charles complains the evidence does not support the juvenile court's finding that there was probable cause to establish a curfew violation. He is wrong.

It is well settled "[t]here is probable cause to arrest when the facts known to the arresting officer would lead a person of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that an individual is guilty of a crime. [Citation.] The standard of probable cause to arrest is the probability of criminal activity, not a prima facie showing. [Citation.]" (*People* v. *Lewis* (1980) 109 Cal.App.3d 599, 608 [167 Cal.Rptr. 326]; see *Illinois* v. *Gates* (1983) 462 U.S. 213, 244-246 [103 S.Ct. 2317, 2335-2336, 76 L.Ed.2d 527].)

Schaffer responded to a dispatch report indicating several minors were loitering in front of the market and recruiting adults to buy beer. When he arrived, Charles and another youth were standing in front of the store. Charles appeared to be under curfew age. He quickly supplied his name and birth date, confirming Schaffer's suspicions.

Charles faults the officer for his failure to establish that none of the exceptions to the curfew ordinance applied here. We note there was no

guardian, or is engaged in an employment which makes it necessary to be then in or upon the streets, alleys, parks or other public places."

evidence to show that Charles, then only 14 years of age, was working at the time the officers arrived. He was obviously not in the company of his parents, and the officers were unable to contact them to verify whether Charles was employed or on some emergency mission at their request. The minor did not offer any such excuse for his presence, and no such claims were raised in the suppression motion. Viewed in any light, there was ample probable cause to arrest the minor for a curfew violation.

### III

■ Charles's next contention, the seizure of the methamphetamine was illegal because the intrusion into his coin pocket exceeded the scope of a reasonable search incident to arrest, must fail. *In re Demetrius A.* (1989) 208 Cal.App.3d 1245 [256 Cal.Rptr. 717] is instructive on this point. There, a police officer issued a warning to a minor in violation of a curfew ordinance and instructed him to go home. A short time later, the officer saw the minor lurking outside an apartment complex. Suspecting some criminal activity was afoot, the officer questioned the minor and arrested him for prowling. The officer planned to drive the minor home and release him to his parents. Before the journey commenced, he searched the minor and discovered cocaine in one of his pockets.

■ Applying the *Robinson-Gustafson* rule (*United States* v. *Robinson* (1973) 414 U.S. 218 [94 S.Ct. 467, 38 L.Ed.2d 427]; *Gustafson* v. *Florida* (1973) 414 U.S. 260 [94 S.Ct. 488, 38 L.Ed.2d 456]), the appellate panel concluded "a full body search might properly be made as an incident to a lawful arrest. 'It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a *full search of the person* is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.' [Citation.]" (*In re Demetrius A., supra,* 208 Cal.App.3d at p. 1248, italics added.)[2]

■ Here, as in *Demetrius A.,* "there [was no] question but that [the minor] was taken into custody, albeit only for transportation to his home.

[2]*Robinson* held any arrest where the suspect is *taken into custody* supports a full search of the person without regard to the nature of the offense for which the arrest was made. *Robinson* left undecided whether such a search would be reasonable where the defendant was cited for an infraction, like a routine traffic stop, *without being taken into custody.* (414 U.S. at p. 236, fn. 6 [94 S.Ct. at p. 477].) The United States Supreme Court answered that question in *Knowles* v. *Iowa* (1998) 525 U.S. 113 [119 S.Ct. 484, 142 L.Ed.2d 492], ruling the mere issuance of a traffic citation for speeding does *not* justify a full search of an automobile under the search incident to arrest exception recognized in *Robinson.* (See *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 206 [101 Cal.Rptr. 837, 496 P.2d 1205] [pre-Proposition 8 case holding a police officer may not routinely search a motorist stopped for a traffic infraction without specific articulable facts furnishing grounds to believe the motorist may be armed].) Where the defendant is taken into custody, though, a subsequent search is lawful.

The search was therefore permissible under the *Robinson-Gustafson* rule, and accordingly lawful in California." (208 Cal.App.3d at p. 1248.) Put another way, the "lawfulness of the search turns not on whether the officer intended to release the defendant after taking him into custody, but on whether the officer was justified in arresting the defendant and taking him into custody in the first place." (*Ibid.*) Here, Charles was lawfully arrested, i.e., taken into temporary custody, for a curfew violation.[3] That the methamphetamine was seized at the police station rather than the scene of the arrest is of no moment. (*United States* v. *Edwards* (1974) 415 U.S. 800, 803 [94 S.Ct. 1234, 1237, 39 L.Ed.2d 771] [". . . searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention"].) Accordingly, Schaffer was authorized to conduct a full body search, regardless of any evidentiary or safety considerations.

## IV

Approaching the issue from a different angle, Charles contends the Welfare and Institutions Code requires an officer to cite and release a first-time offender for a curfew violation and the officers were not authorized to detain him at the police station. Because the search was the product of an illegal detention, he argues, the contraband must be suppressed. His argument (and the authority he relies on) fails to consider the effect of Proposition 8.

The minor cites *In re Justin B.* (1999) 69 Cal.App.4th 879 [81 Cal.Rptr.2d 852] in support of his position. In *Justin B.* a panel of the Second District held a peace officer abridges a youth's Fourth Amendment right to be free from unreasonable searches and seizures when his only offense is a curfew violation and the officer "transports the minor to the police station and subjects the minor to questioning designed to elicit incriminating responses." (*Id.* at p. 883.)

The appellate panel concluded, ". . . the officer was not authorized by law to conduct a custodial interrogation of [the minor] at the station based on a curfew violation." (69 Cal.App.4th at p. 888.) Reviewing the statutory scheme, the court noted a minor taken into temporary custody for a curfew

---

(*People* v. *Monroe* (1993) 12 Cal.App.4th 1174, 1195 [16 Cal.Rptr.2d 267]; see *Gustafson* v. *Florida, supra,* 414 U.S. 260, 265 [94 S.Ct. 488, 492] [". . . the arguable absence of 'evidentiary' purpose for a search incident to a lawful arrest is not controlling"].)

[3]We note "to take into temporary custody" is the functional equivalent of an arrest: "As 'temporary custody' and 'arrest' constitute essentially identical procedures we use those terms interchangeably and attach no particular significance to the use of either one." (*In re Thierry S.* (1977) 19 Cal.3d 727, 734, fn. 6 [139 Cal.Rptr. 708, 566 P.2d 610].)

violation must be released, delivered to the appropriate agency for shelter, counseling, or diversion, released following preparation of a notice to appear before a probation officer, or taken without unnecessary delay to the county probation officer. (*Id.* at p. 889.) Welfare and Institutions Code section 626 states the officer "shall prefer the alternative which *least restricts the minor's freedom of movement*, provided that alternative is compatible with the best interests of the minor and the community." (Italics added; see Welf. & Inst. Code, §§ 601, 625, 626.5.)[4]

Based on these "statutory restrictions," the court "conclude[d] the Legislature has *preempted the field* of what precise actions a peace officer may undertake upon finding a minor in violation of a curfew ordinance. [Citations.] *Transporting the minor who has violated a curfew ordinance to the station and conducting a custodial interrogation is not authorized.* [¶] . . . [T]ransportation of [the minor] to the station and the ensuing custodial interrogation were unlawful and violative of [his] right to be free from unreasonable searches and seizures under the Fourth Amendment of the federal Constitution. The court therefore erred in denying [the] suppression motion." (*In re Justin B., supra,* 69 Cal.App.4th at pp. 889-890, italics added.)

The Attorney General argues *Justin B.* was wrongly decided, and we agree. We note article I, section 28, subdivision (d) of the California Constitution (Proposition 8) precludes the exclusion of evidence as a remedy for violation of state or federal search and seizure provisions " 'unless exclusion is compelled by the federal Constitution.' " (*People* v. *Plyler* (1993) 18 Cal.App.4th 535, 544 [22 Cal.Rptr.2d 772]; *People* v. *Blardony* (1998) 66 Cal.App.4th 791, 794 [78 Cal.Rptr.2d 291].) The minor does not cite, nor has our research revealed, any federal constitutional provision prohibiting a peace officer from detaining a juvenile arrested for a misdemeanor offense and searching the minor at the police station. Thus, on this point, we part company with *Justin B.* and conclude any violation of the applicable Welfare and Institutions Code provisions did not run afoul of the Fourth Amendment. In other words, the remedy of evidentiary exclusion is

---

[4]When a city or county adopts a resolution implementing Welfare and Institutions Code section 625.5, an officer dealing with a minor for a first curfew violation "is not authorized to do anything other than to issue the minor a warning citation, a copy of which is forwarded to the minor's parents or guardian for signature and return. For a subsequent violation, the officer is entitled to temporarily detain the minor and then the officer must transport the minor to the minor's parent or to a temporary place of residence within the state. The officer is also imbued with discretion not to detain the minor temporarily if he or she determines the minor has a valid reason for violating the ordinance." (*In re Justin B., supra,* 69 Cal.App.4th at p. 889.) Nothing in the record suggests the City of Orange has ever passed a resolution adopting section 625.5 of the Welfare and Institutions Code.

simply not available to resolve a violation of the Legislature's scheme for dealing with curfew violators. It contains no exclusionary rule of its own, much less one passed by the supermajority required by Proposition 8.

In any event, our review of the record also persuades us there was no violation of the statutory scheme. Pursuant to Welfare and Institutions Code section 207, subdivision (b)(2), a minor described by section 601 can be taken into custody and held in a secure facility (defined to exclude a facility in which adults are held in custody) for up to 24 hours in order to locate a parent or guardian and arrange a return to his or her parents. Under section 625, subdivision (a), an officer may take a minor into temporary custody if there is reasonable cause to believe "that such minor is a person described in Section 601 or 602 . . . ." In this situation, section 626 authorizes the officer to select one of four alternatives. The statute also directs the officer to choose the alternative "which least restricts the minor's freedom of movement, provided that alternative is *compatible with the best interests of the minor and the community*." (*Ibid.*, italics added.)

That is precisely what occurred here. Schaffer confirmed the minor was in violation of the curfew ordinance. But he was unable to locate the minor's parents and arrange for them to reclaim their son at the parking lot. Pursuant to Welfare and Institutions Code section 207, Schaffer was authorized to detain and transport the minor to the police station to arrange a parental pickup.[5] The record reveals the minor was asked to fill out a juvenile contact report, but there is no indication he was ever booked. (See 80 Ops.Cal.Atty.Gen. 149 (1997) [peace officer may not book (fingerprint and photograph) a minor for violation of a city curfew ordinance].) The incriminating evidence was not the product of any custodial interrogation; it was recovered during a search the officers were legally entitled to make. Officers finally contacted a relative at 1:45 a.m., approximately one hour after Schaffer's first encounter with the minor. One hour and fifteen minutes later, Charles was released to a relative at the police station.

No matter how we view this scenario, we are left with one conclusion— the disposition chosen *was* the least restrictive alternative compatible with

---

[5] Pursuant to Welfare and Institutions Code section 207, subdivision (b), a minor in custody may not be held in a "facility in which adults are held in secure custody." The minor argues a police station falls with the terms of this definition and he has established a violation of section 207. Nonsense. As the Attorney General correctly notes, "no evidence in the record or case authority . . . classifies the City of Orange Police Station as a facility in which adults are held in secure custody under the meaning of section 207, subdivision (b) . . . ." Nothing in the record indicates Charles was incarcerated with or exposed to any adult inmates. To the contrary, it appears all four minors were taken to and kept in an interview room in the rear portion of the detectives' bureau. Accordingly, defendant's request for judicial notice is denied.

the best interests of the community *and* the minor. Abandoning a teenager (who appeared to be up to no good and whose parents, for some reason, were missing in action) at a supermarket parking lot in the wee hours of the morning was not a desirable option.

Judgment affirmed.

Sills, P. J., and Scoville, J.,* concurred.

A petition for a rehearing was denied December 8, 1999, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied March 1, 2000. Mosk, J., was of the opinion that the petition should be granted.

*Retired Presiding Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.