Filed 3/25/14  In re K.M. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>K.M.,<br><br>    Defendant and Appellant. | A138163<br><br>(Alameda County<br>Super. Ct. No. SJ1208410) |

**I.**

**INTRODUCTION**

Appellant K.M. appeals from a true finding by the juvenile court that on November 11, 2012, he committed an attempted robbery of a minor, S.G., as alleged in a wardship petition filed against him under Welfare and Institutions Code section 602, subdivision (a) (section 602).  Appellant contends the trial court made a legal error in interpreting the intent requirement necessary for the commission of a robbery.  We disagree, and affirm the finding and disposition.

**II.**

**PROCEDURAL AND FACTUAL BACKGROUNDS**

On November 14, 2012 a subsequent section 602 wardship petition was filed by the Alameda County District Attorney's Office alleging that appellant committed felony

attempted robbery (Pen. Code, §§ 664, 211[1]) (Count One), and a misdemeanor violation of drawing or exhibiting an imitation firearm (§ 417.4) (Count Two). As to Count One, the petition also alleged that appellant used a deadly and dangerous weapon in the course of committing the attempted robbery (§ 12022, subd. (b)).

Appellant had been previously declared a ward of the court, and was on formal probation at the time of the offenses alleged in the subsequent petition. A contested jurisdictional hearing began on December 17, 2012, and continued on January 10, 2013, before concluding on January 29, 2013. At the conclusion of the jurisdictional hearing appellant's counsel made a motion to dismiss the petition under Welfare and Institutions Code section 701.1 as to Count One and the arming enhancement, which was denied.

At the conclusion of the hearing, the court found Counts One and Two true (felony attempted robbery and a misdemeanor violation of drawing or exhibiting an imitation firearm, §§ 664, 211, 417.4). The court made no finding as to the enhancement allegation.

A disposition hearing was held on February 20, 2013, at which time the juvenile court continued appellant on formal probation. This timely appeal followed.

The jurisdictional hearing commenced with the testimony of the minor victim, S.G. He testified that on November 11, 2012, at approximately 8:30 p.m., he and his friend E.P. were walking home after playing pool at Chalk It Up in Hayward. As S.G. and E.P. passed by a parking lot, someone came from behind the driver's side of a large white moving-type truck and pointed what appeared to be a handgun at S.G., and then at his friend E.P. The gunman wore a black "jabberwocky" mask, a gray "hoodie," and a brownish vest. The mask covered the gunman's face from forehead to chin and the hoodie covered the gunman's hair. The gunman "aggressively" stated, "Give me your stuff" or "Give me your shit." S.G. was in shock and initially did not know what to do.

S.G. then performed a "gun take-away" martial arts move to disarm the gunman, elbowing the gunman in the face. E.P. knocked the gunman to the ground, and S.G.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

kneed the gunman in the stomach. S.G. then observed that the weapon was a $CO_2$ gun when a cap fell off the gun. S.G. took the gun with him and started to run away with E.P. when the gunman shouted to someone in a nearby car, "Shoot him, shoot him, shoot him." As S.G. ran, he threw the gun into a bush. S.G. and E.P. then hid in a nearby schoolyard, where S.G. called the police.

Hayward Police Officer Manuel Troche responded to a dispatch call, and arrived at the scene about five or ten minutes after S.G.'s call. S.G. and E.P. emerged from the school area, and S.G. identified himself as being the caller. S.G. and E.P. provided a description of the assailants and their vehicle to Officer Troche, who transmitted the information to the dispatch operator. The officer was informed by the dispatcher that deputies from the Alameda County Sheriff's Office had stopped a vehicle matching the description of the assailants' car.

S.G. told Officer Troche that he had taken away the gun from the one of the assailants, and had thrown it into a bush. Officer Troche searched the bush indentified by S.G., and found the weapon. The weapon was an inoperable BB or Airsoft gun. Officer Troche then transported S.G. to the location where the suspected assailants and their vehicle had been stopped for an in-field showup.

When they arrived at the location where the suspect vehicle had been stopped, the two suspects were inside separate patrol cars. Although S.G. had not seen the gunman's face because he was wearing a mask, S.G. knew the gunman's height, skin tone, and that he was wearing a gray jacket. Appellant was the first suspect shown to S.G. S.G. identified appellant as the person who had robbed him. S.G. was not able to identify the second suspect. Officer Troche looked inside the detained vehicle and saw a "jabberwocky" mask in the back seat, and a weapon magazine on the floorboard of the front passenger seat.

After being arrested and given his Miranda admonitions, appellant told the officer that earlier when he saw S.G., an individual with whom he had "a beef" in the past, appellant came up with a plan to pretend to rob S.G. Appellant claimed that he really did not plan to rob S.G., but only wanted to scare S.G. and to fight him. Appellant stated that

3

he exited his car and approached S.G. acting like he was about to rob him.  However, S.G. took his "B.B." gun away and punched him in the face several times.  Appellant was kicked, but fought back.  Appellant yelled out for his friend to help.  When appellant's friend M.R. approached, S.G. and E.P. ran away from the scene.  Appellant and M.R. gave chase for a few steps, but decided instead to return to their car and flee.  Later, deputies from the Alameda County Sheriff's Office performed a traffic stop on appellant and M.R.

In his defense appellant called his friend M.R.  M.R. stated that at approximately 7:00 to 8:00 p.m., he and appellant were driving to a friend's house, when they saw two individuals walking on the street who M.R. did not know.  Appellant asked M.R. to take him back to his house because he had forgotten something.  When they arrived at appellant's house, appellant went inside for five minutes and returned with a jacket.  M.R. and appellant drove back to the location where they had seen the two individuals previously.  Appellant told M.R. to pull over and let him out of the car.  Appellant did not tell M.R. what he was planning to do.  M.R. parked the car and stayed in it, where he then made a phone call.

After a short period of time, appellant called M.R.'s name.  M.R. drove up the street and saw appellant on the ground being hit by the two individuals.  The two individuals started to run, but then they turned around and went back towards appellant.  M.R. saw one of the men pick up a gun.  M.R. exited the car and yelled, "Shoot him" once or twice.  M.R. claimed that he made this statement because he wanted to scare off the individuals who had been beating up appellant.  When M.R. said, "Shoot him," the individuals ran away.

Appellant testified that about one week earlier, he passed three people on the other side of the sidewalk, one of whom was S.G.  Appellant had seen S.G. approximately eight or nine times before, but the two had never spoken.  On this occasion, appellant heard one of the three individuals say, "Do you know him?" Appellant turned around, and was punched in the back of his head.  Appellant did not see who punched him.

4

Appellant fell to the ground and the other two individuals punched appellant four or five times. Eventually, the three stopped hitting appellant and ran away.

On November 11, 2012, at around 8:00 p.m., as appellant and M.R. were driving to a friend's house, appellant saw S.G. and another person walking down the street. Appellant became angry because S.G. and his friends had beaten him up just a few days before.

Appellant asked M.R. to take him home because he wanted to pick up something. When they had reached appellant's home, appellant went inside and obtained gloves, a mask, a jacket, and a BB gun. Appellant stated that he intended to use the items to scare S.G.

Appellant returned to M.R.'s car and the two drove back towards their friend's house. As they were driving, appellant saw S.G. again. Appellant asked M.R. to let him out of the car, but did not tell him why. Appellant exited the car, put on the gloves and mask, and hid behind a truck. Appellant stated, "I was planning on just jumping out and just scaring him, and then after that, just making it known that it was me." Appellant jumped out from behind the truck, holding the BB gun. The gun was not loaded and had no $CO_2$. Appellant claimed that he did not have pellets or $CO_2$ in the gun because he was not attempting to hurt S.G.

He pointed the gun at S.G. and his friend and said, "Gimme your shit" or "Gimme what you got." Appellant claimed he did not actually want to obtain the property of the individuals, but instead wanted them to believe the robbery was real. S.G. performed a gun "take-away move" that disarmed appellant and knocked him down. S.G. and his friend then hit appellant while he was on the ground. Appellant did not fight back. He yelled for M.R., who shouted out, "Shoot him, shoot him." S.G. and his friend ran.

Appellant and M.R. went back to the car and drove away. They were pulled over by sheriff's deputies a short time later.

At the conclusion of the evidentiary stage of the jurisdictional hearing, defense counsel again argued to the court that the evidence failed to show that appellant intended to rob S.G. After hearing argument, the juvenile court found true the allegation of

attempted robbery (Count One, and a true finding on the misdemeanor violation of drawing or exhibiting an imitation firearm (Count Two)). No finding was made regarding the use enhancement.

## III.

## DISCUSSION

The sole issue raised by appellant on appeal is his contention that the trial court committed legal error in finding that appellant committed an attempted robbery, as charged in Count One. He claims that the trial court misunderstood the intent requirement for robbery, and wrongly concluded that appellant committed an attempted robbery based on a finding that appellant's intent was to scare the victim and not to deprive him of his property.

The crime of robbery is defined in section 211: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." The elements of robbery are: (1) the taking of personal property in the possession of another; (2) from the victim's person or immediate presence; (3) against the victim's will and accomplished by force or fear; and (4) with the specific intent to permanently deprive the victim of the property. (*Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 221; *People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1057.) Attempt to commit an offense occurs when the defendant has the specific intent to commit the target crime and does a direct but ineffectual act towards its commission. (*Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 185.) The act need not be an element of the substantive offense, but only an overt act towards execution that is beyond mere preparation. (*Ibid.*; *People v. Ross* (1988) 205 Cal.App.3d 1548, 1554-1555.)

Appellant's assertion of error is based on the following exchange which occurred between defense counsel and the juvenile court after the conclusion of the evidence portion of the jurisdictional hearing:

"The Court: It's a unique situation in terms of the defense. I don't hear this kind of defense very often.

6

"[Appellant's counsel]: No, it's true. And I think that's the reason that I'm asking the court to really consider [appellant's] statement. I think a lot of times we have a tendency to disregard or be skeptical of minors' statements, and for a good reason. They often say things that are possibly false or—

"The Court: Well, here's my question. I know it's the intent of the perpetrator, not the intent or the visibility—what would we call it?—what the victim sees, necessarily, that governs the act, but isn't the act in this case purely an attempted robbery? I mean regardless of what—he acted to make an attempted robbery so he could scare the guy. And maybe he didn't intend to necessarily take anything from him, but he intended to make it look like he was going to take something from him.

"[Appellant's counsel]: Well, again, as I mentioned in the beginning of my argument on the [Welfare and Institutions Code section] 701.1 motion, pretending to commit a crime is not the same as attempting to commit a crime.

"The Court: Is it? Is it not? I mean where do you get that? It's nice to hear it, but I don't know if I've seen any legal authority for it."

After further arguments by appellant's counsel claiming that the evidence showed only that appellant intended to scare the victim and not to take his property the juvenile court continued:

"The Court: Yes. But how many guys do we see around here that wear masks and gloves and hide their identity other than by wearing a hoodie, black hoodie, which everybody seems to wear? This is actually an extra step towards committing a robbery, in my opinion."

After hearing more arguments from both counsel, the juvenile court concluded

"The Court: Well, the way I analyze this is that [appellant] has created a defense after a failed attempted robbery, and because he's clever enough to think of that idea, as [the prosecutor] said, it was very close to succeeding other than the fact that the guy elbowed him and knocked him down. [¶] So he is described by [section 602] in that he committed the attempt[ed robbery] as charged in [C]ount [One]."

7

From this exchange, appellant puts particular emphasis on the court's comment that, "I mean regardless of what—he acted to make an attempted robbery so he could scare the guy. And maybe he didn't intend to necessarily take anything from him, but he intended to make it look like he was going to take something from him." Appellate counsel asserts that this statement evinces a clear misunderstanding of the law of robbery which requires the specific intent to steal and not simply to scare the victim. We disagree that this is a sufficient showing the juvenile court misunderstood the intent element of the common law crime of robbery.

Considering the highlighted comment in the context of the court's entire remarks, it is reasonably clear to us that the court was simply rearticulating and weighing the argument of appellant's trial counsel that the only direct evidence of appellant's intent was his own statement that he only wanted to scare the victim and not to take his property. In implicitly rejecting the argument the court observed that appellant and his companions had put on gloves, masks and hooded sweatshirts which the court considered "an extra step" in preparing for a robbery. The court then concluded that the defense had been concocted only after the robbery was foiled by the victim who, together with his friend, knocked appellant to the ground, observing that appellant was "creat[ing] a defense after a failed attempted robbery, and because he's clever enough to think of that idea."

Appellant concedes that normally a trial court is presumed to know and apply the law correctly. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 836.) This presumption applies to juvenile delinquency cases. (*In re Justin B.* (1999) 69 Cal.App.4th 879, 888.) Appellant likewise concedes that this presumption applies absent an affirmative showing to the contrary. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549-551.)

Appellant's citation to a single comment in the record does not overcome the presumption that the court knows the law it is applying, particularly in a case involving a charge of common law robbery. Indeed, the record belies appellant's assertion that the court misunderstood the law of robbery. We note that earlier in the jurisdictional hearing,

8

after the prosecution rested, appellant made a motion for a dismissal of the attempted robbery charge. That portion of the hearing transcript reveals that in discussing appellant's "clever" defense, counsel for both sides argued ardently about whether the intent element of the crime of robbery had been proven. As he did throughout the jurisdictional hearing, appellant's counsel contended that the evidence showed only that appellant wanted to "scare" S.G. by simulating a robbery, in retaliation for S.G. having "jumped" appellant some time earlier. It was during this exchange that counsel pointed out with clarity that robbery required evidence of intent to steal, while in this case, at best, the evidence showed only an attempt to scare S.G. The juvenile court rejected that defense and properly found that the evidence supported a finding that an attempted robbery had been committed.

In light of the foregoing, we conclude that the trial court did not err by misconstruing the law of robbery, and furthermore, that the court's conclusion that appellant committed an attempted robbery was supported by substantial evidence.

## IV.
## DISPOSITION

The court's true finding as to Count One is affirmed.

9

_____

RUVOLO, P. J.

We concur:

_____

REARDON, J.

_____

HUMES, J.

*In re K.M.*, A138163