Filed 6/1/18

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re R.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.W., <br><br> Defendant and Appellant. | E068746 <br><br> (Super.Ct.No. J270122) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Corey G. Lee, Judge. Affirmed.

Esther K. Hong, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 12, 2017, Deputy Slawson was on duty at the Barstow Sheriff's Department. At about 7:30 p.m., she was asked by fellow deputy Mamon to watch a juvenile he had detained (minor) during a stolen vehicle investigation[1] until her mother arrived from Phelan to pick her up. The department had a policy which required minors in sheriff's custody to be kept at the station for their safety until they could be released to their parent or another authorized adult. At the time she was turned over to Deputy Slawson's custody, minor was no longer under investigation and no charges were being filed against her. Deputy Slawson escorted minor into the report-writing room and told her to have a seat until her mother arrived.

As Deputy Slawson was doing paperwork on an unrelated matter, minor began speaking to her about the vehicle theft. Minor said she stole the car, and she wanted to speak with the deputy who made the initial traffic stop and arrested the driver. Minor asked to use Deputy Slawson's personal cell phone to call the deputy, but Deputy Slawson refused. Minor became frustrated and increasingly impatient. Deputy Slawson then asked minor some basic questions about the case. When it became clear from minor's responses that she had no involvement in the car theft, Deputy Slawson told minor that she did not need to lie to make herself a suspect in that case.

_____

[1] Testimony that minor was a passenger in the stolen vehicle when the driver was arrested was stricken as hearsay, so we do not consider it in our analysis.

Minor got upset, grabbed her bags, and walked out of the room. She headed towards the door leading out to the sheriff's secured parking lot. Deputy Slawson told minor to come back into the room, but minor refused to comply. As minor started to open the exit door, Deputy Slawson grabbed her by the right arm. Minor, who is taller than Deputy Slawson, pulled away and continued to exit the building. Another female deputy helped Deputy Slawson stop minor from leaving, and a third deputy eventually came to assist as well. Minor resisted the deputies' efforts, and she was handcuffed. Minor was seated back in the report-writing room but was not arrested. After about 10 minutes, minor calmed down and her handcuffs were removed. Minor's mother arrived 15 to 20 minutes later and took custody of minor. Deputy Slawson issued minor a citation for resisting a peace officer, and a juvenile court subsequently found true the allegation that minor violated Penal Code section 148, subdivision (a)(1).

## II.

## DISCUSSION

On appeal, minor argues there is insufficient evidence to support the juvenile court's finding, because her custody was unlawful at the time Deputy Slawson restrained her from leaving. We therefore review the facts in a light most favorable to the finding, and presume all facts reasonably deduced from the record, to see if the finding of the juvenile court is supported by substantial evidence. (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 981 (*Joseph F.*).) Although this is a juvenile case, our review is

3

governed by the same standards that apply to adult criminal appeals. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.)

Penal Code section 148, subdivision (a)(1), makes it a misdemeanor for anyone to "willfully resist[], delay[], or obstruct[] any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office." (Pen. Code, § 148, subd. (a)(1).) To sustain a finding of true for this offense, there must be proof beyond a reasonable doubt that the officer was acting pursuant to her lawful duties at the time the resistance occurred. (*Joseph F.*, *supra*, 85 Cal.App.4th at p. 982.) There can be no violation of Penal Code section 148, subdivision (a)(1), if minor's detention was unlawful at the time she resisted. (*Ibid.*) Minor does not question the propriety of her initial custody by Deputy Mamon. Her appeal only challenges Deputy Slawson's detention after minor was cleared of the stolen car investigation. Thus, our analysis is limited to whether there is substantial evidence to support a finding that Deputy Slawson was acting within her lawful duties when she prevented minor from leaving the station before her mother arrived. We conclude there was.

As a threshold matter, we recognize that while we apply the same standard of review, in general warrantless arrests of juveniles are not viewed in the same light as similar adult detentions. (*Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1215 (*Alfredo A.*).) Juvenile proceedings are " 'fundamentally different' " from adult criminal proceedings because the " 'State has "a *parens patriae* interest in preserving and promoting the welfare of the child." ' " (*Id.* at pp. 1225, 1228, quoting *Santosky v.*

4

*Kramer* (1982) 455 U.S. 745, 766.) Indeed, " ' "juveniles, unlike adults, are always in some form of custody." ' " (*Alfredo A.*, at p. 1228, quoting *Schall v. Martin* (1984) 467 U.S. 253, 265.) In the juvenile criminal justice system, warrantless detentions are governed by statute. Welfare & Institutions Code [2] section 625 provides that "A peace officer may, without a warrant, take into temporary custody a minor: (a) Who is under the age of 18 years when such officer has reasonable cause for believing that such minor is a person described in Section 601 or 602." (§ 625, subd. (a).) Section 602 states that: "any person who is under 18 years of age when he or she violates any law [other than a curfew ordinance based solely on age] is within the jurisdiction of the juvenile court . . . ." (§ 602.) Here, minor was detained as part of a stolen vehicle investigation, so she comes within the scope of section 602, and Deputy Mamon was authorized to take minor into temporary custody under section 625, subdivision (a).

According to section 626, minors detained under section 625 may be (a) released, (b) delivered to an agency for shelter, (c) released after issuing a notice to appear before a probation officer, or (d) delivered to a probation officer. (§ 626, subds. (a)-(d).) In deciding between these options, an officer "shall prefer the alternative which least restricts the minor's freedom of movement, provided that alternative is compatible with the best interests of the minor and the community." (§ 626.) Minors being temporarily detained may be taken to a curfew center or other facility to await pickup by their

---

[2] All further references to statute will be to Welfare & Institutions Code unless otherwise specified.

5

parents. (*In re Ian C.* (2001) 87 Cal.App.4th 856, 859-860 (*Ian C.*). See *In re Charles C.* (1999) 76 Cal.App.4th 420, 427 (*Charles C.*).)

The record in this case shows that as soon as Deputy Mamon completed his investigation of minor, his intent was to release minor into her mother's custody in keeping with section 626, subdivision (a). Deputy Slawson testified that Deputy Mamon did not file charges against minor. Deputy Mamon told Deputy Slawson that minor's mother was on her way from Phelan to pick minor up from the station. Deputy Slawson, when asked whether minor was free to leave the station, stated: "[W]hen mom comes over to the station and we relinquish custody of her to her mother, yes." We find these facts to be substantial evidence that minor was no longer being detained for purposes of the investigation, but was in custody under Deputy Slawson's supervision solely for her safety until her mother arrived, as required under department policy. This detention was neither unreasonable nor unlawful. We find nothing in the language of section 626 requiring the release of a minor to be unconditional, and case law suggests that this type of protective temporary detention is permitted by statute. (*Ian C.*, *supra*, 87 Cal.App.4th at pp. 859-860; *Charles C.*, *supra*, 76 Cal.App.4th at p. 427.)

In *Ian C.*, *supra*, 87 Cal.App.4th 856, a minor challenged a " 'patdown' " search by police after he was stopped for a curfew violation and transported to a curfew center to wait for his parents. (*Id.* at p. 858.) On appeal, the court found that police lawfully detained the minor for violating curfew pursuant to section 625, subdivision (a), and properly conditioned his release after detention upon being turned over to the custody of

6

a responsible adult. (*Id.* at pp. 859-860.) Although *Ian C.* involves a minor violating curfew rather than, as here, a minor potentially involved in a car theft, its reasoning is applicable to this case. As the *Ian C.* court explained, holding a minor in temporary custody pending release to a parent is an alternative which least restricts the minor's movement while also serving the community interest in efficient law enforcement. (*Id.* at p. 859 [a community's law enforcement interests are not served by having its police officers turned into "chauffeurs and babysitters for wayward children"].)

There was a similar holding in *Charles C.*, *supra*, 76 Cal.App.4th at pp. 426-427. Charles C. was a minor initially detained for a curfew violation. He was taken to the police station after officers could not reach his parents to pick him up in the parking lot where he was found. While there, the minor was searched and methamphetamine was found. (*Id.* at pp. 422-423.) On appeal, the minor challenged his detention based on the holding in *In re Justin B.* (1999) 69 Cal.App.4th 879 (*Justin B.*) that officers are prohibited from taking a minor to the station for a curfew violation. (*Charles C.*, at pp. 425-426, quoting *Justin B.*, at pp. 888-889.) The *Charles C.* court squarely rejected the *Justin B.* holding. The court found that taking Charles C. to the station was the least restrictive alternative given the situation and was "compatible with the best interests of the minor and the community." (*Charles C.*, at pp. 426-428, italics omitted.) It also found the officer's actions did not violate either federal or state Constitutions. (*Id.* at pp. 426-427.)

7

In this case, having minor wait at the station for her mother served her best interest while limiting the impact on law enforcement resources.  Detaining minor until she could be released to her parent was for her safety.  At 16 years old, minor was presumably afforded a certain level of independence, but the fact remains she was still a minor subject to the control of a parent or legal guardian until she reached 18.  Once she was in custody, deputies were responsible for her safety until her parent or legal guardian arrived.  It is well established that juveniles have a " ' "lack of maturity and an underdeveloped sense of responsibility," ' " and they "lack the ability to extricate themselves from horrific, crime-producing settings."  (*Miller v. Alabama* (2012) 567 U.S. 460, 471 (citing *Roper v. Simmons* (2005) 543 U.S. 551, 569).)  Thus, minor's age made her more susceptible than an adult to the potential dangers of leaving the station to wander the streets of Barstow on foot, nearly an hour away from home, after dark, in the winter, with no supervision.  On the other hand, it would have been a drain on sheriff's resources to require a deputy to drive minor back to Phelan.  Under the circumstances, it was reasonable to keep minor at the station until her mother arrived.

We see no reason to distinguish *Ian C.* and *Charles C.* from this case because minor was not detained for a curfew violation like the other juveniles.  All of the minors were detained for a lawful purpose, and they were all held for their safety after the grounds for the initial detention ended so they could be released to a responsible adult.

We are unpersuaded by minor's argument that her detention by Deputy Slawson was invalidated because Deputy Slawson failed to advise her of her constitutional rights pursuant to section 625. Section 625 provides in relevant part that where a minor is taken into temporary custody on the reasonable belief that such minor violated a law as described in section 602, the officer "shall advise such minor that anything he says can be used against him and shall advise him of his constitutional rights . . . ." (§ 625.) It is clear from the language of the statute that the advisement of rights is required at the time a minor is taken into temporary custody. Minor does not challenge the propriety of her initial detention by Deputy Mamon, and concedes that her detention for purposes of the investigation was concluded by the time Deputy Slawson took custody of her. As previously discussed, minor's continued detention by Deputy Slawson was solely for the purpose of keeping her safe until her mother arrived to take her home. We find nothing in the language of the statute or in any relevant case law requiring that a minor in temporary custody be advised of his or her constitutional rights when such minor is not being interrogated, is no longer the subject of a criminal investigation, and is merely waiting to be picked up by a parent. As such, it was lawful for deputies to take minor to the sheriff's station after the stolen car investigation ended and hold her there until she could be released to an authorized adult.

Because Deputy Slawson's detention of minor was lawful, minor's reliance on *In re Chase C.* (2015) 243 Cal.App.4th 107 (*Chase C.*) falls short. *Chase C.* involved the arrest of a minor for resisting in violation of Penal Code section 148, subdivision (a)(1), when he encouraged others, who were being investigated for selling drugs, not to cooperate with police. (*Id*. at pp. 110-114.) In *Chase C.*, the minor was not suspected of any wrongdoing, he was only detained because he instructed the other juveniles not to speak to police. (*Id.* at pp. 112-113.) In contrast, minor was initially detained because she was suspected of being involved in a vehicle theft. At the time she resisted Deputy Slawson, she was in lawful temporary custody for her safety until her mother arrived. Moreover, Chase C. did not run from police or resist in any physical manner. (*Id.* at pp. 112, 115.) Minor, on the other hand, refused Deputy Slawson's instruction to return to the report-writing room, and was about to exit the building when Deputy Slawson grabbed her. There was every indication that minor, who was upset, noncompliant, and walking out the door, would have left the scene and been out of Deputy Slawson's control if she was not stopped. Minor escalated the situation to the extent other deputies had to intervene, and she continued to resist until deputies were forced to handcuff her. For all of these reasons, we find substantial evidence that Deputy Slawson was lawfully exercising her duties when she restrained minor, and minor's resistance to Deputy Slawson violated Penal Code section 148, subdivision (a)(1).

III.

DISPOSITION

Finding of the juvenile court affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

FIELDS
J.