181 Cal.App.4th 989 (2010)
In re A.G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
A.G., Defendant and Appellant.
No. D053991.
Court of Appeals of California, Fourth District, Division One.
February 4, 2010.
*993 Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

*994 OPINION
McDONALD, J.
The People alleged in an amended petition that A.G., a minor, came within the juvenile court jurisdiction under Welfare and Institutions Code[1] section 602 because she violated Vehicle Code sections 23136, subdivision (a), and 22349, subdivision (a), and San Diego Municipal Code section 58.0102. The court sustained the allegations of the Vehicle Code section 22349, subdivision (a) violation, and the San Diego Municipal Code section 58.0102 violation, and found A.G. was a person described in Welfare and Institutions Code sections 601 and 602. At the dispositional hearing, the court placed A.G. on six months' probation.
A.G. challenges the true finding that she violated the curfew ordinance embodied in San Diego Municipal Code section 58.0101 et seq. (the San Diego curfew ordinance). She asserts the ordinance contains an implied requirement that to violate it she must have previously been given a curfew violation warning citation, and there was no evidence she had previously been given a warning citation. She also asserts the San Diego curfew ordinance violates the equal protection clauses of the United States and California Constitutions.

I

FACTUAL AND PROCEDURAL HISTORY

A. The Offenses

On May 28, 2008, at approximately 1:00 a.m., Officer Rodriguez of the California Highway Patrol stopped a speeding vehicle on Interstate 8. A.G. was driving and was the sole occupant of the vehicle. Rodriguez asked A.G. why she was speeding, and A.G. responded that she was trying to arrive home before her parents. Rodriguez also noticed signs A.G. had been consuming alcohol and administered two field sobriety tests. Although he concluded A.G. had been drinking alcohol, and the amended petition included the allegation that A.G. had violated Vehicle Code section 23136, subdivision (a), that allegation was dismissed at trial.

*995 B. The Hearings

Defense counsel objected to the amended petition to the extent it added the alleged San Diego curfew violation. Defense counsel argued that the "[section] 625.5[, subdivision] (d) process has [not] been followed," and that a true finding for violating curfew based merely on her "passing through a town" would deny A.G. her rights under both the federal and state Constitutions. The court noted A.G.'s objections but proceeded with trial. After hearing the evidence and further argument, the trial court entered true findings that A.G. violated the San Diego curfew ordinance and Vehicle Code section 22349, subdivision (a), and found she was a person described in Welfare and Institutions Code sections 601 and 602.

II

THE SAN DIEGO CURFEW ORDINANCE
The San Diego curfew ordinance provides it is unlawful for any minor to be present in any public place or on the premises of any establishment within the City of San Diego between the hours of 10:00 p.m. any evening of the week, until 6:00 a.m. the following day. (San Diego Mun. Code, §§ 58.0101, 58.0102, subd. (a).) However, San Diego Municipal Code section 58.0102, subdivision (c), also provides that it is a defense to prosecution under that ordinance when the minor is:
"(1) accompanied by the minor's parent or guardian, or by a responsible adult;
"(2) on an errand at the direction of the minor's parent or guardian, or the responsible adult, without any detour or stop;
"(3) in a motor vehicle involved in interstate travel;
"(4) engaged in an employment activity, or going to or returning home from an employment activity, without any detour or stop;
"(5) involved in an emergency;
*996 "(6) on the sidewalk abutting the minor's residence;
"(7) attending an official school, religious, or other recreational activity supervised by adults and sponsored by the City of San Diego, a civic organization, or another similar entity that takes responsibility for the minor;
"(8) exercising First Amendment rights protected by the United States Constitution; or
"(9) emancipated pursuant to law."
The San Diego curfew ordinance provides that, before taking any enforcement action under this section, a police officer must ask the apparent offender's age and reason for being in the public place or on the premises of the establishment during curfew hours, and shall not issue a citation or make an arrest under this section unless the officer reasonably believes an offense has occurred and, based on any responses and other circumstances, no defense under San Diego Municipal Code section 58.0102, subdivision (c), is applicable.

III

THE STATUTORY INTERPRETATION CLAIM[2]
A.G. does not assert, under the strict terms of the San Diego curfew ordinance, there was no evidence to support the true finding. Instead, A.G. relies on section 625.5 as mandating that a juvenile can only be found in violation of a curfew ordinance if the juvenile had previously been issued a warning citation for a curfew violation. A.G. argues that In re Justin B. (1999) 69 Cal.App.4th 879 [81 Cal.Rptr.2d 852] held section 625.5 was intended to occupy the field, and therefore asserts the San Diego curfew ordinance contains an implied element that, before a juvenile can be found in violation of that ordinance, the prosecution must plead and prove the juvenile had previously been issued a warning citation. From this predicate, A.G. asserts *997 the true finding must be reversed because the prosecution neither pleaded nor proved A.G. had previously been issued a warning citation for a curfew violation.
Section 625.5 provides it shall "only apply to a city, county, or city and county in which the governing body of the city, county, or city and county has enacted an ordinance prohibiting minors from remaining in or upon the public streets unsupervised after hours and has adopted a resolution to implement this section." (Id., subd. (b).) Section 625.5 provides in relevant part:
"(c) Except as provided in subdivision (d), law enforcement personnel are authorized to temporarily detain any minor upon a reasonable suspicion based on articulable facts that the minor is in violation of the ordinance described in subdivision (b) and to transport that minor to his or her place of permanent or temporary residence within the state, whether the place of residence is located within or without the jurisdiction of the governing body, or to the custody of his or her parents or legal guardian....
"(d) Upon the first violation of the ordinance described in subdivision (b), the law enforcement officer shall issue to the minor a warning citation regarding the consequences of a second violation of the ordinance. A designated representative of the governmental entity issuing the citation shall mail to the parents of the minor or legal guardian a notification that states that upon a second violation, the parents or legal guardian may be held liable for actual administrative and transportation costs, and that requires the parents or legal guardian to sign and return the notification. This notification shall include a space for the explanation of any circumstances relevant to an applicable exemption from the fee as provided by subdivision (e). This explanation shall be reviewed by a designated representative of the governmental entity that issued the citation and notification. If the explanation is found to be insufficient, the representative may request a consultation with the parents or legal guardian for the purpose of discussing the circumstances claimed to be relevant to an applicable exemption.
"(e) A fee for the actual costs of administrative and transportation services for the return of the minor to his or her place of residence, or to the custody of his or her parents or legal guardian, may be charged jointly or severally to the minor, his or her parents, or legal guardian, in an amount not to exceed those actual costs. Upon petition of the person required to pay the fee, the governmental entity issuing the citation shall conduct a hearing as to the *998 validity of the fees charged, and may waive payment of the fee by the minor, his or her parents, or legal guardian, upon a finding of good cause. If authorized by the governing body, the city, county, or city and county may charge this fee, in which case the city, county, or city and county may (1) provide for waiver of the payment of the fee by the parents or legal guardian upon a determination that the person has made reasonable efforts to exercise supervision and control over the minor, (2) provide for a determination of the ability to pay the fee and provide that the fee may be waived if neither the minor nor the parents or legal guardian has the ability to pay the fee, (3) provide for the performance of community service in lieu of imposition of the fee, and (4) provide for waiver of the payment of the fee by the parents or legal guardian upon a determination that the parents or legal guardian has limited physical or legal custody and control of the minor."
(1) We are required to construe section 625.5 to determine whether the Legislature intended by that enactment to preclude cities or counties from treating curfew violations as misdemeanors when the juvenile has not previously received the warning citation described in subdivision (d). In construing a statute, we apply settled rules of statutory construction: "`When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law."' [Citation.] `[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] `If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider `a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we `select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (People v. Sinohui (2002) 28 Cal.4th 205, 211-212 [120 Cal.Rptr.2d 783, 47 P.3d 629].)
(2) We are convinced section 625.5 was not intended to superimpose a prior warning requirement before an ordinance may validly treat a curfew violation as a misdemeanor. (3) First, section 625.5 by its own terms specifies it shall only apply when the governing body has (1) enacted an ordinance prohibiting minors from remaining in or upon the public streets unsupervised after hours, and (2) "has adopted a resolution to implement this section." (§ 625.5, subd. (b), italics added.) Thus, the legislative language on its face shows it will have no application unless the governing body has opted into the provisions of section 625.5 by adopting an implementation ordinance, and A.G. has not cited any basis for concluding the City of San Diego has *999 adopted that resolution. (Cf. In re Charles C. (1999) 76 Cal.App.4th 420, 426, fn. 4 [90 Cal.Rptr.2d 430] [limitations imposed by § 625.5 inapplicable where no resolution adopted].)
(4) More importantly, we are convinced section 625.5 was not designed to define the minimum elements of a curfew offense in California. Instead, its primary purpose is to relieve cities and counties of one of the fiscal burdens caused by curfew violators, and concomitantly to provide financial disincentives for minors and their parents to ignore curfew laws, by providing a mechanism by which the costs associated with detaining and transporting minors who violate curfew regulations are borne by the parents and/or minors rather than by the general public. Section 625.5 expressly stated it was "the intent of the Legislature in enacting this section to accomplish the following purposes: [¶] (1) To safeguard the fiscal integrity of cities and counties by enabling them to recoup the law enforcement costs of identifying, detaining, and transporting minors who violate curfew ordinances to their places of residence[,] [¶] (2) [t]o encourage parents and legal guardians to exercise reasonable care, supervision, and control over their minor children so as to prevent them from committing unlawful acts[,] [and] [¶] (3) [t]o help eradicate criminal street gang activity" (§ 625.5, subd. (a)). To accomplish those purposes, the statutory scheme contemplates that, "[e]xcept as provided in subdivision (d)," when an officer suspects the minor is in violation of the curfew ordinance, the officer may detain the minor and transport that minor to his or her place of permanent or temporary residence (§ 625.5, subd. (c)), and the minor or parent may be required to pay the costs associated with that law enforcement activity (§ 625.5, subd. (e)). The subdivision (d) exception provides that, "[u]pon the first violation of the ordinance described in subdivision (b), the law enforcement officer shall issue to the minor a warning citation regarding the consequences of a second violation of the ordinance," and requires a notification be sent to the parents or legal guardian stating they may be held liable for actual administrative and transportation costs if there is a second violation. (§ 625.5, subd. (d).)
(5) The apparent intent behind section 625.5 is not to superimpose a prior citation element into all curfew ordinances, but is instead to impose a "prior citation/notice to parents" requirement if the governing body wishes to take advantage of section 625.5's authorization for recouping from a parent or minor the law enforcement costs associated with a second violation. Even assuming the City of San Diego had adopted a resolution implementing section 625.5, the prior citation requirement would be relevant only to actions for recoupment against the minor or parent, and would be irrelevant to whether the minor violated the underlying curfew ordinance.
A.G.'s reliance on In re Justin B., supra, 69 Cal.App.4th 879 is misplaced. The issue in that case was not whether the minor had violated the curfew *1000 ordinance; to the contrary, the minor was not even charged with that offense. Instead, the sole issue was whether a minor could be arrested and subjected to a lengthy detention and custodial interrogation at a police station based on a curfew violation. The Justin B. court, relying on an Attorney General opinion that stated a curfew violation would not permit transporting the minor to the police station and subjecting him to a custodial interrogation at a police station (id. at p. 890), as well as its view that section 625.5 limited the types of actions a police officer could take and did not include arrest and custodial interrogations (Justin B., at pp. 888-889), concluded the statements by the minor were the product of an unlawful search and seizure (id. at p. 890). Even assuming Justin B. was correctly decided (but see In re Charles C., supra, 76 Cal.App.4th at pp. 425-428 [concluding Justin B. was wrongly decided]), it has no application here because there is no claim A.G. was wrongly detained or interrogated.

IV

THE CONSTITUTIONAL CLAIM
A.G. alternatively asserts the San Diego curfew ordinance is invalid because it violates the equal protection clauses of the federal and state Constitutions. She contends the statute impinges on a minor's fundamental right to travel, and thereby also burdens a minor's First Amendment rights to speech and association, without being narrowly tailored to serve a compelling state interest.[3]

A.G.'s Facial Challenge
A.G. asserts the San Diego curfew ordinance is invalid under the rationale employed by Nunez by Nunez v. City of San Diego (9th Cir. 1997) 114 F.3d 935 (Nunez) in which the court invalidated San Diego's previous curfew law; she argues the current iteration of the San Diego curfew ordinance continues to offend the equal protection clause. The People counter that the San Diego curfew ordinance is valid, under the rationale of Qutb v. Strauss (5th Cir. 1993) 11 F.3d 488 (Qutb), because the current version of the San Diego curfew ordinance contains exceptions that adequately safeguard protected conduct.

*1001 The Appropriate Standard of Review

(6) The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." (Cleburne v. Cleburne Living Center, Inc. (1985) 473 U.S. 432, 439 [87 L.Ed.2d 313, 105 S.Ct. 3249].) Only if the challenged government action classifies or distinguishes between two or more relevant groups must we conduct an equal protection inquiry. (Brennan v. Stewart (5th Cir. 1988) 834 F.2d 1248, 1257.) Here, the San Diego curfew ordinance indisputably distinguishes between classes of individuals on the basis of age, and because the San Diego curfew ordinance distinguishes between two groups, we must analyze the San Diego curfew ordinance under the equal protection clause.
Curfew ordinances of varying configurations have a long history, both in California (see, e.g., Alves v. Justice Court (1957) 148 Cal.App.2d 419 [306 P.2d 601]) and in other jurisdictions around the country (see Note, Juvenile Curfews and the Major Confusion over Minor Rights (2005) 118 Harv. L.Rev. 2400, 2402), and numerous courts in both the state and federal systems have addressed constitutional issues similar to the issues implicated by the San Diego curfew ordinance. (See, e.g., State v. J.P. (Fla. 2004) 907 So.2d 1101; Treacy v. Municipality of Anchorage (Alaska 2004) 91 P.3d 252; Ramos v. Town of Vernon (2d Cir. 2003) 353 F.3d 171 (Ramos); Hutchins v. District of Columbia (D.C. Cir. 1999) 188 F.3d 531 (Hutchins); Nunez, supra, 114 F.3d 935; Qutb, supra, 11 F.3d 488.) The courts that have analyzed the constitutionality of the curfew ordinance before them have disagreed over the appropriate level of scrutiny to apply: some courts appear to have applied the deferential "rational basis" level of scrutiny (see, e.g., Sale ex rel. Sale v. Goldman (2000) 208 W.Va. 186 [539 S.E.2d 446, 456]; People v. Walton (1945) 70 Cal.App.2d Supp. 862, 866-867 [161 P.2d 498]); others have applied the so-called "intermediate scrutiny" approach (see, e.g., Hodgkins ex rel. Hodgkins v. Peterson (7th Cir. 2004) 355 F.3d 1048, 1057 (Hodgkins); Ramos, supra, 353 F.3d at p. 181; Hutchins, supra, 188 F.3d at p. 541); and a third group of courts have applied "strict scrutiny" to the ordinances under review. (See, e.g., Nunez, supra, 114 F.3d at p. 946; Qutb, supra, 11 F.3d at p. 492.)
We must initially determine the appropriate level of scrutiny for this court to employ for our assessment of A.G.'s equal protection challenge to the validity of the San Diego curfew ordinance. A.G. asserts strict scrutiny is the applicable standard to test whether the San Diego curfew ordinance violates her right to equal protection under the federal and state Constitutions, while the People contend we must reject A.G.'s equal protection challenge if the classifications established by the San Diego curfew ordinance satisfy the rational basis standard of review.
*1002 Generally, legislation is presumed to pass constitutional muster and will be sustained under the equal protection clause if the classification drawn by the statute or ordinance is rationally related to a legitimate state interest. (Cleburne v. Cleburne Living Center, Inc., supra, 473 U.S. at p. 440.) However, when the classification either disadvantages a "suspect class" or impinges on a "fundamental right," the ordinance is subject to strict scrutiny review. (Plyler v. Doe (1982) 457 U.S. 202, 216-217 [72 L.Ed.2d 786, 102 S.Ct. 2382].) Because age is not a suspect classification, statutory classifications based on age are ordinarily subject to rational basis review. (Gregory v. Ashcroft (1991) 501 U.S. 452, 470 [115 L.Ed.2d 410, 111 S.Ct. 2395].)
A.G. argues, however, that strict scrutiny should apply because the ordinance infringes on fundamental rights protected by the Constitution: the right of free movement and the right to travel. Certainly, there is substantial authority for the proposition that laws burdening the "constitutional right to travel, or, more precisely, the right of free interstate migration" will be subjected to strict scrutiny. (Attorney General of N. Y. v. Soto-Lopez (1986) 476 U.S. 898, 902 [90 L.Ed.2d 899, 106 S.Ct. 2317], italics added.) Although the United States Supreme Court has not explicitly held that intrastate travel is similarly a fundamental right protected by the federal constitution (see Schor v. City of Chicago (7th Cir. 2009) 576 F.3d 775, 780; see also Hutchins, supra, 188 F.3d at p. 537 [right to travel under federal constitution may be limited to narrower right to "travel across borders, not mere `locomotion'"]), some California cases have characterized the right to intrastate travel as "a basic human right protected by the United States and California Constitutions as a whole. Such a right is implicit in the concept of a democratic society and is one of the attributes of personal liberty under common law." (In re White (1979) 97 Cal.App.3d 141, 148 [158 Cal.Rptr. 562]; see also Tobe v. City of Santa Ana (1995) 9 Cal.4th 1069, 1100-1101 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)
(7) Although cases such as Tobe and White appear to support the conclusion that California recognizes a right to intrastate travel for adults that would be fundamental for equal protection purposes, it is unnecessary in this case definitively to delineate the extent to which an adult's right to intrastate travel is a "fundamental right." Even assuming an ordinance directly restricting movement of an adult would impinge on that adult's fundamental rights and thereby subject any classification to strict scrutiny (cf. City of Chicago v. Morales (1999) 527 U.S. 41, 54 [144 L.Ed.2d 67, 119 S.Ct. 1849]), the critical question is whether a minor has a corresponding right that would require the same restrictive level of scrutiny. In many situations, minors do not possess the same constitutional rights possessed by adults; for example, minors are afforded less freedom of choice than adults with respect to numerous rights, including marriage, labor, voting, or access to First *1003 Amendment-protected expression of the "adult entertainment" variety, all of which are (or likely would be deemed) fundamental when exercised by an adult. The inherent differences between minors and adultsspecifically the minor's immaturity, vulnerability, and need for parental guidancehave been recognized by the United States Supreme Court as the basis to justify treating minors differently from adults under the Federal Constitution. (See Bellotti v. Baird (1979) 443 U.S. 622, 634-635 [61 L.Ed.2d 797, 99 S.Ct. 3035].) "So `although children generally are protected by the same constitutional guarantees... as are adults, the State is entitled to adjust its legal system to account for children's vulnerability' by exercising broader authority over their activities." (Hutchins, supra, 188 F.3d at p. 541, quoting Bellotti, supra, 443 U.S. at p. 635.)
Bellotti's rationale is persuasive to the extent a curfew ordinance constrains a minor from freely engaging in conduct in which an adult counterpart would be free to engage. For example, there is little doubt that (even absent a curfew) police could take into custody a vulnerable eight-year-old child found alone at night on a city street for the child's own safety and well-being, while a similar treatment of an adult would be impermissible. Even assuming police may not do the same to a more mature minor solely under the parens patriae function, an unemancipated minor still does not have the right to freely "come and go at will." (Vernonia School Dist. 47J v. Acton (1995) 515 U.S. 646, 654 [132 L.Ed.2d 564, 115 S.Ct. 2386].) Indeed, "juveniles, unlike adults, are always in some form of custody" (Schall v. Martin (1984) 467 U.S. 253, 265 [81 L.Ed.2d 207, 104 S.Ct. 2403]), and they lack an unfettered right to travel because their right to free movement is limited at least by their parents' authority to consent to or prohibit movement (see Ramos, supra, 353 F.3d at pp. 182-183). As one court observed when it elected to apply intermediate scrutiny to a curfew ordinance despite its impacts on the juvenile's right of movement, "it would be inconsistent to find a fundamental right here, when the [Supreme] Court has concluded that the state may intrude upon the `freedom' of juveniles in a variety of similar circumstances without implicating fundamental rights ...." (Hutchins, supra, 188 F.3d at p. 539.)
(8) As New York's highest court recently observed, "[r]ather than categorically applying strict scrutiny to a curfew which implicates a minor's right to free movement simply because the same right, if possessed by an adult, would be fundamental, courts have found that intermediate scrutiny is better suited to address the complexities of curfew ordinances ...." (Anonymous v. City of Rochester (2009) 13 N.Y.3d 35, 46-47 [915 N.E.2d 593, 886 N.Y.S.2d 648] (Anonymous).) Selection of this intermediate scrutiny standard acknowledges the unquestioned precepts that minors do have rights protected by the Constitution but are concomitantly subject to greater regulation and control by the state than are adults (Ramos, supra, 353 F.3d at *1004 pp. 180-181), yet nevertheless provides a sufficiently probing scrutiny that reconciles the competing considerations of rigorously protecting constitutional rights while retaining adequate flexibility to accommodate legislation carefully crafted to address the particularized situation of minors. (See Hutchins, supra, 188 F.3d at p. 541.) As summarized by the Fourth Circuit when it selected intermediate scrutiny to evaluate an equal protection challenge to a curfew ordinance: "In light of the case law, two things seem clear. First, children do possess at least qualified rights, so an ordinance which restricts their liberty to the extent that this one does should be subject to more than rational basis review. Second, because children do not possess the same rights as adults, the ordinance should be subject to less than the strictest level of scrutiny. See Carey v. Population Servs. Int'l, 431 U.S. 678, 693, n. 15 [52 L.Ed.2d 675, 97 S.Ct. 2010] (1977) (plurality opinion) (when minors are involved the level of scrutiny `is apparently less rigorous than the "compelling state interest" test applied to restrictions on the privacy rights of adults'); [citation]. We thus believe intermediate scrutiny to be the most appropriate level of review and must determine whether the ordinance is `substantially related' to `important' governmental interests." (Schleifer by Schleifer v. City of Charlottesville (4th Cir. 1998) 159 F.3d 843, 847 (Schleifer).)
We agree with the line of authority, represented by Schleifer, and conclude the constitutional validity of the San Diego curfew ordinance should be tested under the intermediate scrutiny standard.

Application of the Test
(9) The intermediate scrutiny test, as first articulated in Central Hudson Gas & Elec. v. Public Serv. Comm'n (1980) 447 U.S. 557 [65 L.Ed.2d 341, 100 S.Ct. 2343], examines whether the asserted governmental interest promoted by the law is substantial, whether the law directly advances the governmental interest asserted, and whether the law is not more extensive than is necessary to serve that interest. (Id. at p. 566.) "The court has clarified that the last part of the testdetermining whether the regulation is not more extensive than `necessary'does not require the government to adopt the least restrictive means, but instead requires only a `reasonable fit' between the government's purpose and the means chosen to achieve it. [Citation.]" (Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 952 [119 Cal.Rptr.2d 296, 45 P.3d 243].)
(10) The parties do not dispute the underlying purposes served by the San Diego curfew ordinance include reducing juvenile crime and preventing juveniles from victimization. The courts have generally recognized those governmental interests served by curfew ordinances are at least substantial within the meaning of the intermediate scrutiny test (see, e.g., Hutchins, supra, *1005 188 F.3d at p. 542 ["there can be no serious dispute that protecting the welfare of minors by reducing juvenile crime and victimization is an important government interest"]) and, indeed, have even been found to be sufficiently compelling to satisfy the most rigorous of the equal protection tests. (See, e.g., Nunez, supra, 114 F.3d at p. 947 [concluding city's interest in reducing juvenile crime and juvenile victimization are compelling interests]; Qutb, supra, 11 F.3d at p. 492.)
It is the second and third interrelated prongs of the inquirywhether the particularized provisions of the curfew ordinance directly and materially advance those governmental interests (Schleifer, supra, 159 F.3d at p. 849) and whether those provisions are substantially broader than necessary to advance those interests (see, e.g., Ward v. Rock Against Racism (1989) 491 U.S. 781, 800 [105 L.Ed.2d 661, 109 S.Ct. 2746])that have provided the primary grist for the judicial mill. For those courts that have applied intermediate scrutiny to assess curfew ordinances, some have concluded the curfew ordinance satisfies the second prong because they concluded the statute directly and materially advanced the governmental interests of protecting juvenile's safety and preventing juvenile crime (see, e.g., Schleifer, supra, 159 F.3d at pp. 849-851; Hutchins, supra, 188 F.3d at pp. 542-545), while other courts appear to have reached the contrary conclusion.[4] (See, e.g., Ramos, supra, 353 F.3d at pp. 183-187; Anonymous, supra, 13 N.Y.3d at pp. 48-51 [concluding there was no substantial nexus between evils to be remedied and nocturnal restrictions on minors].)
(11) In evaluating whether the final two interrelated prongs of the intermediate scrutiny analysiswhether the fit between the government's interests and the means chosen to achieve those interests is direct and not substantially more burdensome than necessary to achieve those goalsthe courts have generally recognized the appropriate focus should be placed on the exemptions to determine whether the ban on nighttime activities is substantially more burdensome than necessary to remedy the evils at which the ban was directed. (See, e.g., Qutb, supra, 11 F.3d at pp. 493-494; State v. J.P., supra, 907 So.2d at p. 1117 ["[t]he scope of the exceptions to the curfew *1006 is of more significance in assessing whether an ordinance is narrowly tailored"]; Schleifer, supra, 159 F.3d at pp. 851-852 [upholding curfew because its "narrow scope and comprehensive list of exceptions ... represents the least restrictive means to advance Charlottesville's compelling interests"].) The courts that have invalidated curfew ordinances, under either the intermediate scrutiny analysis or strict scrutiny analysis, have generally done so because they concluded the exemptions/defenses within the ordinances failed to provide adequate breathing room to accommodate the minor's ability either to exercise constitutionally protected fundamental rights (such as 1st Amend. activities or interstate travel) or to engage in other activities that carried none of the dangers the curfew law was designed to ameliorate.[5] (See, e.g., Hodgkins, supra, 355 F.3d at pp. 1060-1065; Johnson v. City of Opelousas (5th Cir. 1981) 658 F.2d 1065, 1072-1074 [absence of exemptions for benign activities fatal to curfew ordinance]; State v. J.P., supra, 907 So.2d at pp. 1117-1119 [failure to have statutory exceptions for juveniles engaged in "`legal, wholesome activities who have the permission of their parents'" was overly broad]; Nunez, supra, 114 F.3d at pp. 948-951 [failure to exempt minors engaged in legitimate activities with or without parental permission or to exempt minors who seek to exercise 1st Amend. rights during curfew hours was overly broad].) Conversely, those courts that have upheld curfew ordinances, under either level of scrutiny, have reasoned the exemptions or defenses provided by the particular ordinance under consideration significantly narrowed the curfew's operative effect to those nocturnal activities that involved conduct both unprotected and likely to generate the dangers at which the statute was targeted. (See, e.g., Hutchins, supra, 188 F.3d at p. 545 [statute upheld applying intermediate scrutiny based in part on recognition that "the eight defenses to the curfew strengthen the relationship between the curfew and its goal of reducing juvenile crime and victimization by narrowing the scope of the curfew ... [by] ensur[ing] that the ordinance does not sweep all of a minor's activities into its ambit but instead focuses on those nocturnal activities most likely to result in crime or victimization" (fn. omitted)]; Qutb, supra, 11 F.3d at p. 494 *1007 ["[b]y including the defenses to a violation of the ordinance, the city has enacted a narrowly drawn ordinance that allows the city to meet its stated goals while respecting the rights of the affected minors" (fn. omitted)]; Schleifer, supra, 159 F.3d at pp. 851-852; Treacy v. Municipality of Anchorage, supra, 91 P.3d at pp. 267-268 [exemptions for minors engaged in legitimate activities, including exemption for traveling to and from such activities, sufficiently tailored to achieve objectives of the curfew].)
We agree that it is the narrowing impact of the exemptions provided by the San Diego curfew ordinance that is pivotal to our conclusion. Under this ordinance, a minor is not subject to misdemeanor liability if in public while accompanied by the minor's parent, guardian, or another responsible adult; in a motor vehicle involved in interstate travel; is involved in an emergency undertaking; or is on the sidewalk abutting the minor's residence. (San Diego Mun. Code, § 58.0102, subd. (c)(1), (3), (5) & (6).) Additionally, as long as the minor does not engage in any detour or stop, the minor is not subject to misdemeanor liability if on an errand at the direction of the minor's parent, guardian, or other responsible adult, or engaged in (or going to or returning home from) an employment activity. (San Diego Mun. Code, § 58.0102, subd. (c)(2) & (4).) These exemptions largely track the exemptions that persuaded other courts to hold the ordinance sufficiently narrowly tailored to avoid being substantially more burdensome than was necessary to achieving the significant government interests underlying the ordinance.[6]
However, the San Diego curfew ordinance parts company, and in significant ways, from the exemptions provided by other ordinances. For example, although the San Diego curfew ordinance (like other ordinances, see fn. 6, ante) exempts minors attending certain official school, religious, or other recreational activities, the San Diego curfew ordinance (unlike the other ordinances) does not permit the minor to travel to or from those activities after 10:00 p.m. (even with parental permission) without being accompanied by an adult. (San Diego Mun. Code, §§ 58.0101, 58.0102, subd. (c)(7).) Additionally, although the ordinance protects a minor "exercising First Amendment rights protected by the United States Constitution" (id., § 58.0102, subd. (c)(8)) the protection is a hollow one because it applies only when the minor is engaged in those activities after 10:00 p.m. with (or even without) parental permission but it does not provide for the minor to travel to or from those activities except when accompanied by an adult.[7] Finally, the ordinance contains no "going to or coming home from" exemption that would *1008 permit a minor safely to pass from one exempt location to another, which circumscribes a minor's ability to attend activities like an evening study group hosted in a fellow student's home (or even a social occasion at that home) and limits the minor to attending those events only when the minor is certain the work (or festivities) will end with enough time to allow the minor's precurfew return home. Thus, the ordinance sweeps within its ambit entirely benign (or even laudable) conduct, and the People offer no articulation of how circumscribing such benign conduct directly and materially furthers the underlying governmental interests of preventing crime and victimization.
At least three other courts, applying the same intermediate scrutiny to curfew ordinances that we employ here, have concluded the ordinances were invalid. (See Hodgkins, supra, 355 F.3d 1048; Ramos, supra, 353 F.3d 171; Anonymous, supra, 13 N.Y.3d 35.) Although the ordinances considered by those courts contained slight variations, and the rationales of those courts for invalidating the ordinances contain elements not germane here, they have expressed at least some level of concern that the ordinance either imposed restrictions that left inadequate breathing room for the exercise of First Amendment rights (see Hodgkins, supra, 355 F.3d at p. 1064 [only way for minor to avoid risk of arrest under curfew law while exercising 1st Amend. rights was to find adult to accompany him and "[t]o condition the exercise of First Amendment rights on the willingness of an adult to chaperone is to curtail them"]), or that the restrictions imposed on minors were not limited to those types of conduct that had a reasonably tight nexus to the underlying goals of the ordinance. (See, e.g., Ramos, supra, 353 F.3d at pp. 183-187; Anonymous, supra, 13 N.Y.3d at pp. 48-51.) The San Diego curfew ordinance suffers from both defects: it imposes de facto restrictions on or conditions to the exercise of First Amendment rights (as well as restricting or conditioning the minor's ability to attend certain official school, religious, or other recreational activities), and it restricts the minor's ability to engage in activities after 10:00 p.m. in otherwise safe (and potentially supervised) environments without any suggestion that going directly to (or returning directly home from) those locales implicates the juvenile crime and juvenile victimization goals of the ordinance.
(12) We conclude that, although a more narrowly tailored curfew ordinance is within the legislative prerogative, the present ordinance "sweeps too broadly and includes within its ambit" "otherwise innocent and legal conduct by minors even where they have the permission of their parents." (State v. J.P., supra, 907 So.2d at pp. 1117, 1118.) We conclude the San Diego curfew ordinance is unconstitutional, and therefore we vacate the true finding entered below.

*1009 DISPOSITION
The true finding that A.G. violated San Diego Municipal Code section 58.0102 is reversed. In all other respects the judgment is affirmed.
Huffman, Acting P. J., and Nares, J., concurred.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] Although we conclude below that the San Diego curfew ordinance is invalid under the equal protection clauses of the United States and California Constitutions, we are cognizant that courts should only reach constitutional questions if the matter cannot be resolved on nonconstitutional grounds. (See generally Sanchez v. City of Modesto (2006) 145 Cal.App.4th 660, 671 [51 Cal.Rptr.3d 821].) We therefore initially evaluate A.G.'s claim that the absence of any prior warning citation requires the true finding be vacated regardless of any purported constitutional infirmities in the San Diego curfew ordinance.
[3] On appeal, A.G.'s principal challenge asserts the San Diego curfew ordinance is unconstitutional on its face by impermissibly restricting a minor's right to travel. However, A.G. also cryptically suggests it is also "unconstitutional as applied here." We conclude A.G.'s secondary claim is moot as a result of our holding that the ordinance is invalid on its face.
[4] The courts that have applied strict scrutiny to assess curfew ordinances likewise appear to be split over whether the curfew ordinance directly advanced the governmental interests of protecting juvenile's safety and preventing juvenile crime. (Compare Nunez, supra, 114 F.3d at p. 948 ["[w]e will not dismiss the City's legislative conclusion that the curfew will have a salutary effect on juvenile crime and juvenile victimization"] and Qutb, supra, 11 F.3d at p. 493 [concluding sufficient nexus existed between the stated interests and the classifications created by the ordinance] with Commonwealth v. Weston W. (2009) 455 Mass. 24 [913 N.E.2d 832, 845] [concluding imposition of criminal liability for curfew violation is an "extraordinary and unnecessary response" and no showing the use of criminal rather than civil penalties provided any increased benefits toward reducing juvenile crime or protecting juveniles against victimization] and State v. J.P., supra, 907 So.2d at pp. 1118-1119.)
[5] For those courts that have applied strict scrutiny to curfew ordinances, similar considerations have convinced many of those courts that the ordinances were invalid. (See State v. J.P., supra, 907 So.2d at pp. 1117-1119 [failure to have statutory exceptions for juveniles engaged in "`legal, wholesome activities who have the permission of their parents'" was overly broad]; Nunez, supra, 114 F.3d at pp. 948-951 [failure to exempt minors engaged in legitimate activities with or without parental permission or to exempt minors who seek to exercise 1st Amend. rights during curfew hours was overly broad].) However, other courts employing strict scrutiny have examined the exemptions/defenses under the ordinance and concluded that "[b]y including the defenses to a violation of the ordinance, the city has enacted a narrowly drawn ordinance that allows the city to meet its stated goals while respecting the rights of the affected minors." (Qutb, supra, 11 F.3d at p. 494, fn. omitted; accord, Treacy v. Municipality of Anchorage, supra, 91 P.3d at pp. 267-268 [curfew exemptions for minors engaged in legitimate activities, including exemption for traveling to and from such activities, found to be least restrictive means to achieve objectives of the curfew].)
[6] (See, e.g., Hutchins, supra, 188 F.3d at pp. 534-535 [substantively similar exemptions]; Qutb, supra, 11 F.3d at p. 498 [substantively similar exemptions].)
[7] The requirement of adult supervision for going to and from First Amendment activities may impermissibly confer on a parent a de facto veto right over after-hours exercise of the minor's First Amendment rights. (See Whittaker, Gay-Straight Alliances and Free Speech: Are Parental Consent Laws Constitutional? (2009) 24 Berkeley J. Gender L. & Just. 48, 60 ["[w]hat remains unclear is whether the State may use parental authority to indirectly limit constitutional rights that the State may not limit directly"].)