Filed 11/14/14  P. v. Porcadilla CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CLIFF PORCADILLA,<br><br>    Defendant and Appellant. | D065047<br><br><br><br>(Super. Ct. No. SCS265878) |

APPEAL from an order of the Superior Court of San Diego County, Edward P. Allard III, Judge.  Affirmed.

Robert H. Rexrode, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kelley Johnson and Ryan H. Peeck, Deputy Attorneys General, for Plaintiff and Respondent.

In July 2013, during a traffic stop, police officers obtained defendant Cliff Porcadilla's permission to look through his wallet.  They found in his wallet a social

security card belonging to Brittany Juarez. With Porcadilla's permission, they searched his vehicle for additional documents and arrested Porcadilla after finding a wallet belonging to Robert Hillier. During the vehicle search incident to arrest, the officers found a small black pouch containing methamphetamine. An inventory search of Porcadilla's wallet yielded a driver's license and multiple debit cards not in his name.

In September 2013, a jury convicted Porcadilla of receiving stolen property (Pen. Code, § 496, subd. (a));[1] obtaining personal identifying information of another (§ 530.5, subd. (c)(1)); and possessing a controlled substance (Health & Safety Code,§ 11377, subd. (a)).

In November 2013, the trial court sentenced Porcadilla to three years of summary probation with specified terms and conditions. On appeal, Porcadilla contends: (1) the probation condition requiring he comply with a curfew, if so directed by his probation officer, is unconstitutionally vague or overbroad; and (2) the probation condition limiting his residence to one approved by his probation officer violates his constitutional right to travel and freedom of association. We affirm the order.

DISCUSSION

I

*Standard of Review*

Porcadilla's contentions raise pure questions of law subject to de novo review. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143 ["[W]e review constitutional challenges

---

[1] All statutory references are to the Penal Code unless otherwise specified.

2

to a probation condition de novo."], citing *In re J.H.* (2007) 158 Cal.App.4th 174, 183.) Although Porcadilla did not challenge the conditions at the time they were imposed, the People agree his claims are not forfeited on appeal. (*In re Shaun R.*, at p. 1143 ["failure to object on the ground that a probation condition is unconstitutionally vague or overbroad is not forfeited on appeal" so long as circumstances present pure questions of law], citing *In re Sheena K.* (2007) 40 Cal.4th 875, 889.)

II

*Probation Conditions*

Trial courts have broad discretion to "impose . . . reasonable [probation] conditions, as [they] may determine are fitting and proper . . . for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1(j).) This discretion, however, "is not unbounded." (*People v. Lopez* (1998) 66 Cal.App.4th 615, 624.) To be valid, a probation condition "must (1) . . . relate[] to the crime of which the defendant was convicted, *or* (2) relate to conduct that is criminal, *or* (3) require or forbid conduct that is reasonably related to future criminality." (*People v. Bauer* (1989) 211 Cal.App.3d 937, 942 (*Bauer*).)

"If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." ' " (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355 (*O'Neil*), quoting *People v. Lopez*, *supra*, 66 Cal.App.4th at p. 624.) But an otherwise valid condition that impinges upon constitutional rights "must be carefully tailored, ' "reasonably related to the compelling

3

state interest in reformation and rehabilitation . . . ." ' " (*Bauer*, *supra*, 211 Cal.App.3d at p. 942, quoting *In re White* (1979) 97 Cal.App.3d 141, 146 (*White*).) Moreover, a probation condition cannot be vague; it " ' ["]must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated . . . .["] ' " (*People v. Barajas* (2011) 198 Cal.App.4th 748, 753, quoting *In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

A. *Curfew Condition*

Porcadilla contends the curfew condition, which requires he comply with a curfew if so directed by his probation officer, is unconstitutionally vague or overbroad because it impinges upon his constitutional right of intrastate travel and because it impermissibly delegates unlimited discretion to the probation officer.

The federal Constitution "guarantees the fundamental right to interstate travel." (*Nunez by Nunez v. City of San Diego* (9th Cir. 1997) 114 F.3d 935, 944, citing *Shapiro v. Thompson* (1969) 394 U.S. 618, 621.) Less clear is whether the Constitution similarly guarantees the right to intrastate travel. (*Nunez*, at p. 944, fn. 7 ["Other circuit courts are split as to whether the Constitution guarantees the fundamental right [to] intrastate travel . . . . We need not decide the issue in order to resolve this appeal, so we express no opinion on it."]; *In re A.G.* (2010) 186 Cal.App.4th 1454, 1470-1471 ["[I]t is unnecessary in this case definitively to delineate the extent to which an adult's right to intrastate travel is a 'fundamental right.' "].) Even if the right to intrastate travel is in fact constitutionally protected, however, a probation condition may restrict that right so long as it is " 'reasonably related to the compelling state interest in reformation and

4

rehabilitation . . . .' " (*White*, *supra*, 97 Cal.App.3d at p. 146, quoting *People* v. *Mason* (1971) 5 Cal.3d 759, 768.)

The People assert the curfew condition is reasonably related to ensuring public safety, preventing drug law violations, and rehabilitating Porcadilla, because he was convicted of possession of methamphetamine, and "because drug[-]related crimes are more likely to occur under the cover of darkness . . . ." The People emphasize that police arrested Porcadilla for the crimes prompting the curfew condition at approximately 8:00 o'clock at night. The People further assert the curfew condition would support Porcadilla's rehabilitation because it would prevent him from associating with drug users and sellers.

At his probation hearing, Porcadilla explained his ultimate goals are to return to his home state of Washington, resume his college studies, and obtain employment. The curfew aids his rehabilitation in at least two ways: by making it easier for him to avoid situations that might tempt him to engage in drug-related activities, and by making it easier for his probation officer to monitor his whereabouts and, ultimately, his compliance with the various conditions of his probation so that Porcadilla can attain his goals. The curfew is reasonably related to reformation and rehabilitation, as it is both related to the crime of which Porcadilla was convicted and designed to curb future criminality.

Porcadilla contends that even if the curfew condition is reasonably related to reformation and rehabilitation, it impermissibly delegates unlimited discretion to his probation officer. To support his position, Porcadilla points to a case in which the

5

probation condition at issue forbade the defendant from associating with any person named by his probation officer. (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1354 ["You shall not associate socially, nor be present at any time, at any place, public or private, with any person, as designated by your probation officer."].) The condition did not specify even the general class of people with whom the defendant was to have no association. (*Id.* at p. 1359.) There, the court found the condition was too broad, as it "contain[ed] no . . . standard by which the probation department [was] to be guided . . . ." (*Ibid.*) Porcadilla asserts the curfew condition imposed here is similarly broad and unguided.

Although a condition cannot be entirely open-ended, a "court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation." (*O'Neil*, *supra*, 165 Cal.App.4th at pp. 1358-1359.) Here, the curfew condition is not open-ended because it limits the discretion of the probation officer to two details: (1) the type of supervision--whether to implement the curfew option and, if so, (2) the level of supervision--for what hours. That discretion is permissible under section 1202.8, subdivision (a), which states, "Persons placed on probation by a court shall be under the supervision of the county probation officer[,] who shall determine *both the level and type of supervision* consistent with the court-ordered conditions of probation." (§ 1202.8, subd. (a), italics added.) The condition is further limited by reasonableness, "[s]ince the court does not have the power to impose unreasonable probation conditions, [and therefore] could not give that authority to the probation officer . . . ." (*People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240.)

Unlike the condition in *O'Neil*, the curfew condition here is not unlimited in nature. It does not provide the probation officer "unfettered discretion . . . to determine its scope," but rather restricts the officer's power to determining the level and type of supervision. (*People v. Leon* (2010) 181 Cal.App.4th 943, 953.) The curfew condition does not impermissibly delegate unlimited discretion.

B. *The Residence Condition*

Porcadilla contends the residence condition, which limits him to a residence approved by his probation officer, violates his constitutional right to travel and freedom of association. He relies primarily on *Bauer*, *supra*, 211 Cal.App.3d 937, and asserts that case "is directly on point."

The right to travel and freedom of association are undoubtedly "constitutional entitlements." (*Bauer*, *supra*, 211 Cal.App.3d at p. 944.) But, as discussed, a probation condition may restrict these rights so long as it reasonably relates to reformation and rehabilitation. (*White*, *supra*, 97 Cal.App.3d at p. 146.) In *Bauer*, the reviewing court struck a residence condition apparently designed to prevent the defendant from living with his overprotective parents. (*Bauer*, *supra*, 211 Cal.App.3d at p. 944.) Nothing in the record suggested the defendant's home life contributed to the crimes of which he was convicted (false imprisonment and simple assault), or that living at home reasonably related to future criminality. (*Ibid.*) The court concluded the probation condition impinged on the defendant's right to travel and freedom of association, and was extremely broad since it gave the probation officer the power to forbid the defendant "from living with or near his parents—that is, the power to banish him." (*Ibid.*)

7

The present case is distinguishable. Unlike the condition in *Bauer*, the residence condition imposed here is not a wolf in sheep's clothing; it is not designed to banish Porcadilla or to prevent him from living where he pleases. In fact, considering Porcadilla's goal "to move to Washington as quickly as possible," the court gave its express approval, stating "[h]e will be permitted to reside in Washington [S]tate." The court meant for the residence condition to "keep the probation officer informed at all times," and not to banish Porcadilla from any geographic region. The court even went so far as to declare there are "no travel restrictions on him."

Moreover, unlike the defendant in *Bauer*, Porcadilla's present convictions include possession of methamphetamine. Where he lives will directly affect his rehabilitation. Without supervision, for example, Porcadilla could choose to live in a residence where drugs are used or sold. The residence condition therefore relates to the crimes of which Porcadilla was convicted and to conduct reasonably related to future criminality. The residence condition properly serves the state's interest in reformation and rehabilitation.

As the parties correctly observe, the constitutionality of probation conditions requiring residence approval is presently before the California Supreme Court. (See *People v. Schaeffer* (2012) 208 Cal.App.4th 1, review granted Oct. 31, 2012.) In *Schaeffer*, the defendant pleaded guilty to possession of methamphetamine and being under the influence of a controlled substance. (*Id.* at p. 3.) The court found the residency probation condition properly served the state's interests because "[w]here she lives will directly affect her rehabilitation . . . ." (*Id.* at p. 5.) The same holds true for Porcadilla who, unlike the defendant in *Schaeffer*, has the additional benefit of unrestricted travel.

8

DISPOSITION

The order granting probation, including the conditions of probation officer imposition of curfew and residence restrictions, is affirmed.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McINTYRE, J.