Filed 2/22/13  P. v. Bell CA1/1
Reposted 3/4/13 to attach unmodified opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WALTER BELL,<br><br>        Defendant and Appellant. | A134249<br><br>(Contra Costa County<br>Super. Ct. No. 05-111297-8)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the nonpublished opinion filed herein on February 8, 2013, be modified as follows:

Replace the first sentence of the first paragraph of page 9 with the following:

Although Officer Scott may well have subjectively intended initially only to issue a citation, that fact does not render the patsearch illegal.  The United States Supreme Court has long held the officer's subjective intent is not controlling if the action he takes is otherwise objectively reasonable.  (*Whren v. United States* (1996) 517 U.S. 806, 813; *Scott v. United States* (1978) 436 U.S. 128, 138.)  The officers here had probable cause to believe defendant had been drinking an alcoholic beverage from an open container in public in violation of the Pittsburg Municipal Code.  In light of all of the circumstances, they did not violate the Fourth Amendment by taking defendant into custody for that

offense, even if only temporarily, for the purpose of frisking him to ensure he did not have any concealed weapons on his person which he could use against them while they completed their investigation and eventually issued a citation.

This modification does not change the judgment.

The petition for rehearing is denied.


_____

Marchiano, P.J.

Filed 2/8/13  P. v. Bell CA1/1 (unmodified version)
Received for posting 3/4/13
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>WALTER BELL,<br><br>     Defendant and Appellant. | A134249<br><br>(Contra Costa County<br>Super. Ct. No. 05-111297-8) |

## INTRODUCTION

Defendant Walter Bell, who admitted to police he was drinking from an open container in public, was arrested and searched.  A loaded firearm was found in his pocket.  He had prior felony convictions, and he was charged with being a felon in possession of a firearm, in violation of Penal Code section 12021.[1]  His motion to suppress was denied, and he was subsequently found guilty as charged by a jury.

On appeal, defendant renews his claim the firearm should have been suppressed because his detention was unduly prolonged and the patsearch was illegal.  He also argues the trial court's refusal to instruct the jury on lawful possession of a firearm by a felon in self-defense was error, and that he is entitled to additional presentence credits under the latest amendment to section 4019.  We find that defendant's detention was not prolonged, and that the police had probable cause to arrest him for drinking in public when they patsearched him.  We also find the trial court was not required to give

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

1

defendant's requested instruction, given the evidence adduced at trial, and we reject his interpretation of section 4019. Accordingly, we affirm.

## STATEMENT OF THE CASE

An information filed in Contra Costa County charged defendant with being a felon in possession of a firearm. (Pen. Code, § 12021, subd. (a).) The information also alleged nine prior convictions, including one that qualified as a strike under the Three Strikes law. Following denial of defendant's motion to suppress evidence pursuant to section 1538.5, the prior convictions were bifurcated from trial on the substantive charge. A jury convicted defendant of the section 12021 violation. The court found true all but one of the prior convictions. On December 9, 2011, the court dismissed the prior strike conviction and sentenced defendant to prison for a two-year term. Defendant timely appeals.

## STATEMENT OF FACTS

At 10:50 p.m. on July 20, 2011, Pittsburg Police Officers James Terry and Brian Scott were driving through the business parking lots in town conducting security checks in their marked patrol car. They saw defendant standing near the Jack In The Box restaurant. Defendant hid something behind the building as they approached. The officers made contact with defendant and Officer Terry identified himself as a police officer. At some point in time, Officer Scott handcuffed defendant. When Officer Terry patsearched defendant, he detected an object in defendant's right front pocket that felt like a firearm. He went into the pocket and retrieved a .380 semiautomatic firearm. He handed it to Officer Scott, who removed the magazine from the gun and six rounds of ammunition from the magazine. Based on his training and experience, Officer Terry opined that the firearm was capable of firing a live round.

Defendant testified on his own behalf. At the time of trial, he was 50 years old and was taking Percodan, Thorazine and Dilantin for pain and mental illness. On July 20, 2011, he was homeless. Living on the street was dangerous, and one of his friends was killed. At that time, he had been getting phone calls from somebody who said he was going to kill defendant and his wife. He did not know who the caller was. The person

2

called him frequently: two and three times a day, two or three times a week. The person called from a blocked number; the reason he answered phone calls from blocked numbers is that his doctors also sometimes called him from blocked numbers.

Some time before July 20, 2011, he found a gun on Loveridge Street. He kept the gun because he was scared that the caller was going to make good on his threats to kill him and his wife. At the point that the police approached him on July 20, he felt as though someone was going to kill him at any moment. He thought "somebody's going to kill me because they say they're going to kill me and I don't know who it is." Asked why he had a firearm, defendant testified: "I found it, then I was thinking about turning it in but after the threats continue[d], I kept it."

In 1990, when he was 30 years old, defendant was convicted of assault with a deadly weapon, battery with serious body injury, and false imprisonment, all felonies. He knew he was not allowed to possess a firearm.

## DISCUSSION

*Denial of Motion to Suppress*

Defendant argues that the trial court erred in denying his motion to suppress. He claims: (1) the detention was unconstitutionally prolonged; (2) the patsearch was illegal because there were no facts to support a reasonable suspicion that defendant was armed; and (3) the patsearch was not justifiable as incident to a lawful arrest. As we shall explain after setting forth the facts developed during the hearing on the motion to suppress, we reject defendant's argument because the detention was not prolonged and the patsearch was incident to a lawful arrest for violation of a Pittsburg Municipal Code ordinance.

*Factual Background*

On July 20, 2011, at approximately 11:00 p.m. Pittsburg Police Officer James Terry and his partner, Officer Brian Scott, were in their patrol car, driving west through a commercial parking lot where there was a Chevron gas station and a Jack In The Box restaurant. Defendant was standing on the north side of the restaurant.

3

It appeared to Officer Terry as if defendant noticed the police car and attempted to conceal something behind the building. Defendant was holding an object in his hand; then defendant moved his hand and the officer could no longer see it. The officers thought this was suspicious behavior, parked the patrol car, and approached defendant to see what it was he had concealed. At that time, Officer Terry saw it was a brown paper bag with an open malt liquor beverage container inside of it. The officers also saw defendant had a cell phone plugged into an electrical outlet in the building and a black Adidas bag full of personal items. Less than a minute had elapsed from the time they initially saw defendant and the time they made contact with him.

Officer Scott began to speak to defendant. They made "small talk" for less than a minute. Scott asked defendant why he was there, if he knew it was illegal to have an open container of alcohol in public, and "if he was drinking it." Defendant admitted he had "a few drinks." Defendant did not produce any type of a permit that allowed him to drink in public under the Pittsburg Municipal Code. Defendant's location was visible to people going through the restaurant's drive-through, as well as the people filling up their cars at the gas station.

Officer Scott asked defendant twice if he had anything illegal on him, and both times defendant "looked down and mumbled" unintelligibly. At that time, due to defendant's erratic behavior, and "[p]aired with the fact that eventually he was going to get a citation for the [Pittsburg] Municipal Code violation," Officer Scott determined he was going to do a patsearch of him "for officer safety purposes" to make sure he had no weapons.

Officer Scott asked defendant to place his hands on his head. He did so, but then took his hands off his head when Scott went to conduct the patsearch. Scott asked defendant again to place his hands on his head, and at that time, both officers "grabbed ahold of Mr. Bell's hands." Defendant pulled away, and Officer Terry took him to the ground. Defendant was handcuffed and arrested. Officer Terry searched him incident to arrest and found a loaded firearm in his right front pants pocket. He was subsequently

4

booked for the firearm possession and resisting and delaying an officer, a violation of section 148.

*Standard of Review*

In reviewing the trial court's denial of a motion to suppress evidence under section 1538.5, we defer to the trial court's express and implied factual findings if they are supported by substantial evidence (*People v. Woods* (1999) 21 Cal.4th 668, 673), and indulge all inferences in favor of the court's order. (*People v. Brown* (1990) 216 Cal.App.3d 1442, 1447.) We exercise independent judgment to determine whether, on the facts found by the trial court, the search was lawful. (*People v. Woods, supra,* at pp. 673–674.)

*The Detention*

Defendant first asserts the detention was unnecessarily and unjustifiably prolonged. He posits that the purpose of the detention was to discover what defendant was concealing, and once the police determined it was an open container, they should have issued the citation instead of twice asking defendant if he had anything illegal on his person. This argument erroneously presupposes that defendant was detained as soon as the police officers started questioning defendant about the open container.

"The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) "As the United States Supreme Court explained in *Florida v. Royer* (1983) 460 U.S. 491 [497]: '[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. [Citations.] Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. . . .' [Citation.]" (*People v. Hughes* (2002) 27 Cal.4th 287, 328.) "An officer has every right to talk to anyone he encounters while regularly performing his

5

duties . . . . Until the officer asserts some restraint on the contact's freedom to move, no detention occurs." (*People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1227; see also *People v. Dickey* (1994) 21 Cal.App.4th 952, 954–955.)

Applying these principles to the facts adduced at the suppression hearing, we do not believe Officer Scott's initial questioning of defendant—described by Officer Terry as "small talk"—effected a seizure of defendant's person. Defendant's freedom to leave was not curtailed until he was asked to put his hands on his head to facilitate a patsearch, at which point the police already had probable cause to arrest defendant for violating Pittsburg's Municipal Code. However, even if we assume that defendant was detained the moment Officer Scott asked him if he had anything illegal on him, that detention was neither unjustified nor unduly prolonged. At that point, defendant's evasive replies, which the officer could properly consider as indicative of a consciousness of guilt, combined with the open container violation, the cell phone plugged into the building, and the late hour, legitimately contributed to the officer's reasonable suspicion that defendant might be concealing something less innocuous than an open can of malt liquor. (*People v. Souza* (1994) 9 Cal.4th 224, 227, 233–235.) The totality of the circumstances supports the reasonableness, and length, of the detention.

*Patsearch of the Defendant Incident to Arrest*

Defendant next argues the patsearch was illegal because the officers had no basis to suspect that defendant was armed and dangerous. " 'A frisk following a detention for investigation "is an additional intrusion, and can be justified only by specification and articulation of facts supporting a reasonable suspicion that the individual is armed." ' [Citation.]" (*People v. Suennen* (1980) 114 Cal.App.3d 192, 199.) We agree with defendant the facts articulated at the hearing do not support a suspicion that defendant was armed. However, that does not mean the officers were prevented, under the

6

circumstances, from frisking or patsearching defendant incident to his arrest for violating the city's open container law.[2]

Pittsburg Municipal Code (PMC) section 9.28.020 provides: "No person may consume any alcoholic beverage while upon a privately owned automobile parking lot to which the public is invited and permitted and open to view from a public street unless an exception exists under PMC 9.28.050 or unless a permit is first obtained pursuant to PMC 9.28.070. [Ord. 1134 § 2, 1997; Ord. 865 § 1, 1984; 1937 Code § 536.2.]" PMC section 9.28.050 makes an exception for uses or activities sponsored or hosted by the city. [Ord. 1134 § 4, 1997; Ord. 865 § 1, 1984.] A violation of this law is an infraction. (PMC § 9.28.100.)[3] It is, therefore, a criminal offense. (Pen. Code §§ 17, 19.8.)

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." (*Atwater v. Lago Vista* (2001) 532 U.S. 318, 354 [mandatory seat belt law].) "Under *Atwater,* all that is needed to justify a custodial arrest is a showing of probable cause. . . . We must therefore conclude that there is nothing inherently unconstitutional about effecting a custodial arrest for a fine-only offense." (*People v. McKay* (2002) 27 Cal.4th 601, 607 [riding a bicycle the wrong way on a

---

[2] In a letter brief, defendant cites a recent Ninth Circuit majority opinion in support of his argument that the police had no basis for believing that defendant was armed and dangerous. (*United States v. I.E.V., Juvenile Male* (9th Cir. Nov. 28, 2012, No. 11-10337) 2012 U.S. App. LEXIS 24426 (*I.E.V.*).) *I.E.V.* is factually distinguishable and analytically inapposite when viewed against the circumstances and conduct of the defendant here. There, the juvenile I.E.V. and his brother were frisked after a checkpoint stop of their vehicle near the Arizona/Mexico border. A police dog displayed alert behavior indicating the presence of either drugs or concealed humans. Defendant's brother acted nervous and fidgety. A brick of marijuana was discovered taped to defendant's abdomen after an officer felt an object during the patsearch and then lifted defendant's shirt. Not only are the circumstances of the frisk factually distinct from those present here, the *I.E.V.* court noted that "[t]he only situation where our Circuit has allowed the search of a suspect's companion involved a case where *the search was incident to a lawful arrest.*" (*I.E.V., supra,* at p. *15, fn. 4, italics added.) Here, as we explain *infra*, the patsearch was incident to a lawful arrest.

[3] (http://www.codepublishing.com/CA/Pittsburg/html/Pittsburg09/Pittsburg0928.html.)

7

residential street].)  Here, the police had ample probable cause to arrest defendant for a violation of Pittsburg Municipal Code section 9.28.020 prior to the patsearch.  Defendant was in possession of an open container of malt liquor.  He admitted he had "a few drinks" from it.  His location was visible to people going through the restaurant's drive-through, as well as the people filling up their cars with gas.  He did not produce any type of a permit that allowed him to drink in public under the Pittsburg Municipal Code.  And, it was obvious from the circumstances that defendant's drinking was not a city sponsored or hosted activity.

Defendant, however, maintains the officers lacked the authority to arrest him for the Pittsburg Municipal Code violation because they did not *see* him drinking and, he asserts, "it *is* undeniably a violation of the Fourth Amendment for a police officer to arrest a suspect for an infraction when that infraction was not committed in his presence."

Defendant is incorrect on this point.  Penal Code section 836, subdivision (a) prohibits a police officer from arresting a person without a warrant for committing a misdemeanor, unless the officer has probable cause to believe the offense has been committed in his or her presence.  However, since the June 1982 passage of Proposition 8 (Cal. Const., art. 1, § 28, subd. (d)), evidence that is seized pursuant to an arrest violative of Penal Code section 836's "in the presence" requirement is not subject to exclusion as long as the arrest passes muster under the federal Constitution.  (*People v. Donaldson* (1995) 36 Cal.App.4th 532, 539; *People v. Trapane* (1991) 1 Cal.App.4th Supp. 10, 13– 14.)  There is no federal constitutional requirement that a misdemeanor be committed in an officer's presence to justify a warrantless arrest.  (*Street v. Surdyka* (4th Cir. 1974) 492 F.2d 368, 371–372; *People v. Trapane, supra,* at p. 13; *Woods v. City of Chicago* (7th Cir. 2000) 234 F.3d 979, 992–995; *State v. Walker* (Wash. 2006) 138 P.3d 113, 120– 121.)  Absent a violation of the federal Constitution, any violation of the state statute does not provide a basis for exclusion.  (See also *People v. McKay, supra*, 27 Cal.4th at p. 618 ["[S]o long as the officer has probable cause to believe that an individual has committed a criminal offense, a custodial arrest—even one effected in violation of state arrest procedures—does not violate the Fourth Amendment."].)

Since the officers had probable cause to believe defendant had been drinking an alcoholic beverage from an open container in public, they did not violate the Fourth Amendment by taking defendant into custody for that offense, even if only temporarily, for the purpose of frisking him to ensure he did not have any concealed weapons on his person which he could use against them while they completed their investigation and/or eventually issued a citation. (*In re Thierry S.* (1977) 19 Cal.3d 727, 734, fn. 6 [" 'As "temporary custody" and "arrest" constitute essentially identical procedures, we use those terms interchangeably and attach no particular significance to the use of either one.' "]; *In re Charles C.* (1999) 76 Cal.App.4th 420, 425, fn. 3; *In re Demetrius A.* (1989) 208 Cal.App.3d 1245.) " 'It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a *full search of the person* is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.' [Citation.]" (*In re Demetrius A., supra,* at p. 1248, italics added.) The patsearch of defendant's outer clothing and subsequent search of his person, in which the concealed firearm was discovered, did not violate the Fourth Amendment. Accordingly, the motion to suppress was properly denied.

*Self-defense Instruction*

Defendant requested an instruction on the lawful possession of a firearm by a felon in self-defense. After extensive discussion with the attorneys about the imminence of the threat perceived by defendant, the trial court declined to give CALCRIM No. 2514. Requested instructions must be given when they are supported by substantial evidence in the record. In this context, "substantial evidence means evidence which is sufficient to deserve consideration by the jury and from which a jury composed of reasonable persons could conclude the particular facts underlying the instruction existed." (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.) It does not mean " '[t]he existence of "*any* evidence, no matter how weak".... ' " (*People v. Moye* (2009) 47 Cal.4th 537, 553, quoting from *People v. Flannel* (1979) 25 Cal.3d 668, 684–685, fn. 12.) In our view, the request for an instruction on self-defense by a felon in possession of a firearm was properly denied here.

9

CALCRIM No. 2514 provides in relevant part: "The defendant is not guilty of unlawful possession of a firearm . . . if [he] temporarily possessed the firearm in [self-defense or defense of another]. The defendant possessed the firearm in lawful [self-defense or defense of another] if: (1) The defendant reasonably believed that [he or someone else] was in imminent danger of suffering great bodily injury; (2) The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; (3) A firearm became available to the defendant without planning or preparation on [his] part; (4) The defendant possessed the firearm temporarily, that is, for a period no longer than was necessary [or reasonably appeared to have been necessary] for self-defense; (5) No other means of avoiding the danger of injury was available; AND (6) The defendant's use of the firearm was reasonable under the circumstances. [¶] Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was imminent danger of great bodily injury to [himself or someone else]. Defendant's belief must have been reasonable and [he] must have acted only because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. . . ."

CALCRIM No. 2514 is based upon *People v. King* (1978) 22 Cal.3d 12 (*King*). In that case our Supreme Court held: "[W]hen a member of one of the affected classes [i.e., one previously convicted of a felony] is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, and without preconceived design on his part a firearm is made available to him, his temporary possession of that weapon for a period no longer than that in which the necessity or apparent necessity to use it in self-defense continues, does not violate section 12021. As in all cases in which deadly force is used or threatened in self-defense, however, the use of the firearm must be reasonable under the circumstances and may be resorted to only if no other alternative means of avoiding the danger are available. In the case of a felon defending himself alone, such alternatives may include retreat where other persons would not be required to do so." (*Id.* at p. 24.)

10

To warrant an instruction based on *King*, there must be more than the serendipitous acquisition of a firearm and generalized fear. There must also be substantial evidence in the trial record to support a finding that the defendant's possession of the firearm was temporary only, and the threat was imminent. In this case, defendant's testimony did not support either of those factual premises. By defendant's own admission, his possession of the firearm was open ended, rather than temporary; he decided to keep it, apparently for as long as the telephone threats continued. ("I found it, then I was thinking about turning it in but after the threats continue[d], I kept it.") Likewise, the threat was ongoing and free floating, rather than imminent. He testified he thought "somebody's going to kill me because they say they're going to kill me and I don't know who it is." No error appears.

*Section 4019 Credits*

Relying on the reasoning of an opinion in which review has been granted,[4] defendant argues he is entitled to an additional 35 days of presentence conduct credit under section 4019 for the period from October 1, 2011, the operative date of the latest amendment to section 4019, to December 9, 2011, the date he was sentenced. The latest amendment to section 4019 provides that a prisoner confined in county jail prior to sentencing is to receive four days of presentence credit for every two days of actual custody. (Pen. Code, § 4019, subds. (a), (b), (c), (e) & (f); Stats. 2011, ch. 15, § 1.) Section 4019, subdivision (h) provides, in relevant part: "The changes to this section . . . shall apply prospectively and shall apply to persons who are confined to a county jail . . . for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." As interpreted by defendant, this subdivision is ambiguous and should be interpreted to mean that those prisoners who committed crimes before October 1, 2011, but who are still

---

[4] See *People v. Olague* (2012) 205 Cal.App.4th 1126, review granted August 8, 2012, S203298.

11

confined in county jail as of October 1, 2011, should accrue credits at the accelerated rate for that period of confinement occurring on or after October 1, 2011.

A more recent case, *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*), has rejected this reasoning.  The *Ellis* court reasoned:  "In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011.  [Citation.]  The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits.  So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced." (*Ellis, supra,* at p. 1553.)  We agree with this view.  Accordingly, we reject defendant's contrary argument.

## DISPOSITION

The judgment is affirmed.


_____
Marchiano, P.J.


We concur:


_____
Margulies, J.

_____
Dondero, J.


12